ELLIOTT ET AL., APPELLANTS, *v.* FOSDICK & HILMER, INC. ET AL., APPELLEES.

(No. 82-03-0034—Decided February 9, 1983.)

Messrs. *Spidel, Staley, Hole & Hanes* and *Mr. William H. Cooper,* for appellants.

Messrs. *Frost & Jacobs, Mr. Gary L. Herfel* and *Mr. John Finnigan,* for appellee Fosdick & Hilmer, Inc.

Messrs. *Kaufman & Jones* and *Mr. William H. Kaufman,* for appellee Wente Construction Co.

Messrs. *McCaslin, Imbus & McCaslin* and *Mr. C. J. DeMichaelis,* for appellee General Telephone Co.

ZIEGEL, J. On July 3, 1980, plaintiffs-appellants, Philip W. and Donna L. Elliott, filed their complaint for damages and loss of consortium arising out of an injury which Philip W. Elliott (hereinafter "plaintiff") received on September 21, 1978, while working as a plumber for Miami University as a result of the alleged negligence of the appellees, Fosdick & Hilmer, Inc., Wente Construction Company, and General Telephone Company. That complaint was amended on July 11, 1980. Thereafter, each of these appellees moved for summary judgment. After a proper hearing, the trial court sustained each of these motions and rendered final judgment for these appellees, from which judgment this appeal is taken.

Appellants assert that in sustaining the motions for summary judgment, the trial court committed error as follows:

"1. The Court erred in holding that Revised Code of Ohio Section 2305.131 was applicable to the facts in this case.

"2. The Court erred in rejecting 'The Delayed Damage Theory.'

"3. The Judgment, below, is contrary to Section 2305.09(D) of the Revised Code of Ohio.

"4. The Judgment, below, is contrary to Section 2305.09(C) of the Revised Code of Ohio.

"5. The Court, below, erred as to the Defendant, General Telephone Company, in holding that it did not have a duty to

the Plaintiff and that the elements of foreseeability are lacking.''

The first three of these assignments of error apply equally to the appellees, Fosdick & Hilmer, Inc. ("Fosdick & Hilmer") and Wente Construction Company ("Wente"). Each of them involves the question of which statute of limitations is applicable to the facts of this case, and they will accordingly be considered together. The trial court held that R.C. 2305.131 applied. That section provides:

"No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, more than ten years after the performance or furnishing of such services and construction. This limitation does not apply to actions against any person in actual possession and control as owner, tenant, or otherwise of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought."

As between appellants and the appellees, Fosdick & Hilmer and Wente, there is no material dispute as to the facts. In about 1940, certain underground ducts connecting certain buildings on the Miami University campus were constructed. By 1978, the use of these ducts had been abandoned. At that time, the university determined to use one of these ducts to extend a gas line from one building to another. The work was being done by the university itself, using its own hired help, of which plaintiff was one. In 1967 and 1968, an underground high voltage electric line was installed connecting certain buildings on the campus.

Fosdick & Hilmer, a consulting engineering firm, prepared the drawings for and supervised the construction of this project. Wente did the construction work on the project.

During the construction, it was noted that the route for the underground work specified in the Fosdick & Hilmer drawings was quite close to a large walnut tree, so that if the project proceeded as planned, the tree would have been destroyed. It being university policy to preserve these large trees, the route was varied so that there was a twenty-foot variance between the route as it appeared on the drawings and its location in the ground. After the project was completed sometime in 1968, as required, on July 24, 1969, Fosdick & Hilmer filed its "as built" drawings with the State Architect's office. These filed drawings, however, did not show the variance caused by the dogleg made necessary in order to avoid the walnut tree.

When the 1978 project was being planned, plaintiff and his co-workers obtained these 1969 drawings and studied them. Plaintiff alleges that acting in reliance upon these drawings, while using a jackhammer to open another duct, he struck the high voltage electrical line, causing him severe bodily injuries.

Appellants contend that the applicable statute of limitations is R.C. 2305.10 which provides that the action shall be brought within two years after the cause accrued. They point out that the cause of action accrued on the date of injury, to wit: September 21, 1978, and that the action was brought on July 11, 1980, well within the two-year limit. Reliance is placed on *Velotta* v. *Les Petronzio Landscaping, Inc.* (1982), 69 Ohio St. 2d 376 [23 O.O.3d 346], paragraph two of the syllabus:

"When negligence does not immediately result in damages, a cause of action for damages does not accrue until actual injury or damage ensues."

In the case before us, Wente did not

do any work on any Miami University duct project after 1968. Fosdick & Hilmer's connection with that project ceased at least when it filed its "as built" drawings with the State Architect on July 24, 1969. The trial judge based his decision on the finding that time started to run for statute of limitations purposes when these appellees performed the act which might be construed as negligent, a date no later than July 24, 1969, obviously more than ten years before July 3, 1980. In their second assignment of error, appellants, per *Velotta*, urge September 21, 1978, as the date on which time started to run.

Ordinarily, the statute of limitations as to torts does not begin to run until the tort is complete, and the tort is not complete until there has been an invasion of a legally protected interest. *Kunz* v. *Buckeye Union Ins. Co.* (1982), 1 Ohio St. 3d 79, 81. Statutes of limitations, however, are creatures of the legislature, and it is within the province of the General Assembly to specify whatever time it wishes for the statutes to begin running. *Vance* v. *St. Vincent Hospital* (1980), 64 Ohio St. 2d 36 [18 O.O.3d 216]. R.C. 2305.131 provides that "[n]o action * * * shall be brought against any person performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, more than ten years after the performance or furnishing of such services and construction." Thus, where a tort is committed in the process of improving real estate, for statute of limitations purposes time begins to run when the activity in connection with that improvement took place.

The applicability of R.C. 2305.131 was not discussed in *Velotta*. There, plaintiffs bought a new residence from the defendant, the vendor-builder, in 1970. There were no warranties in connection with this purchase. In 1975, plaintiffs began experiencing serious water drainage problems. The action was brought on June 1, 1979. Defendant's motion to dismiss was based on the complaint, and the Supreme Court simply held that since the complaint alleged the damage to have occurred sometime in 1975, and the action was commenced on June 1, 1979, it was not shown on the face of the complaint that the action had not been commenced within the four-year general tort limitations period set forth in R.C. 2305.09.

Although the problem in *Velotta* was created in the process of building the residence, *i.e.,* improving the real estate, and the defendant was the builder of the residence, plaintiffs were also "in actual possession and control as" owners "at the time the defective * * * condition of such improvement constitutes the proximate cause of the * * * damage for which the action is brought." R.C. 2305.131. The statute, therefore, did not apply to them. Accordingly, on its facts, *Velotta* is inapposite.

As to Wente, R.C. 2305.131 clearly applies. Its sole responsibility was to, and it did, furnish the construction for improving the real estate, and its activity in that connection ceased in 1968, more than ten years prior to July 3, 1980. As to it, therefore, the first two assignments of error are not well-taken.

Fosdick & Hilmer, however, is in a different position. In their brief, appellants do not contend that Fosdick & Hilmer negligently performed or failed to perform any of the items mentioned in R.C. 2305.131. The sole complaint against it is that it negligently failed to place upon the drawings which it filed with the State Architect the change of the course of the high voltage electric cable which caused the injury to plaintiff. If this activity is construed as being a part of "performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property," then Fosdick & Hilmer is protected from suit. If it cannot be so con-

strued, then this appellee is not so protected.

In reaching its conclusion, the trial court did not analyze this facet of the case.

It is apparent that all of the work on the high voltage electric duct bank project had been completed prior to July 24, 1969, the date on which the "as built" drawings were filed. The very purpose of an "as built" drawing is to reflect any changes which the field situation might have required to be made in the pre-project drawings. The evidence upon which the summary judgment ruling was based did not show any inadequacies of design that made the duct bank unsafe insofar as plaintiff or anyone else was concerned. It became unsafe as to plaintiff because Fosdick & Hilmer filed an inaccurate "as built" drawing that failed to reflect the change in course of the duct bank necessitated by the walnut tree.

A statute of limitations is remedial in nature and is to be given a liberal construction to permit the deciding of cases upon their merits. *Rahm* v. *Hemsoth* (1976), 53 Ohio App. 2d 147, 149 [7 O.O.3d 136]. "[E]very reasonable presumption will be indulged and every doubt will be resolved in favor of affording rather than denying a plaintiff his day in court." *Draher* v. *Walters* (1935), 130 Ohio St. 92, 94 [3 O.O. 121]. "[T]he defense of the statute of limitations has not become a special favorite of the law so as to justify extending it beyond the letter and spirit of its enactment. * * * [Where] the statute proceeds to enumerate the causes of action to which particular limitations of time are to apply * * * if a cause or ground of action is not within such enumeration, as reasonably construed, the statute, like any other statute, is inapplicable, and should not by forced or strained construction be applied thereto." 34 Ohio Jurisprudence 2d 496, Limitation of Actions, Section 11.

We hold that Fosdick & Hilmer's act of filing "as built" drawings is not one of the acts enumerated in R.C. 2305.131, and therefore conclude that the ten-year statute of limitations of R.C. 2305.131 does not apply to it. We further conclude that the "delayed damage" principle enunciated in *Velotta, supra,* and in *Kunz, supra,* as to this appellee, does apply. Appellants' first two assignments of error are accordingly held to be well-taken as to Fosdick & Hilmer.

In their third assignment of error, appellants urge the application of R.C. 2305.09(D) to Fosdick & Hilmer and Wente. R.C. 2305.09 provides in pertinent part:

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

"* * *

"(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code.

"If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor if it is fraud, until the fraud is discovered."

This statute was quoted in a footnote to *Velotta, supra,* and apparently for that reason, appellants urge its applicability to the case before us. While plaintiff was working "under ground," he clearly was not trespassing. He had a right to be where he was working. None of the other items in that statute is even remotely applicable. Appellants' third assignment of error is thus overruled.

The fourth assignment of error applies only to Fosdick & Hilmer. R.C. 2305.09(C) provides for a four-year statute of limitations in cases of fraud. Appellants contend that Fosdick & Hilmer acted fraudulently towards them when it filed an inaccurate "as built" drawing. The trial court disposed of this claim in a brief manner by stating that "[t]here is absolutely no fraud or deceit

alleged or suggested in the pleadings, affidavits, or depositions." We agree. This assignment of error is not well-taken.

The fifth assignment of error applies only to the appellee General Telephone Company. This appellee was not involved in any part of the 1968-1969 project, so there are no statute of limitations problems connected with its involvement in this lawsuit.

Appellants' amended complaint alleges negligence on the part of the telephone company in that one of its employees examined the cable and represented that it was telephone cable, and that he failed properly to identify said cable as not being a telephone cable, but instead being a high voltage electrical cable, all of which the telephone company denied in its answer. The depositions of persons working on the excavation for the purpose of locating the abandoned duct through which the university proposed to place its new gas line reveal that while Joseph Kimball, plaintiff's immediate fellow worker, was using a pneumatic jackhammer to open a concrete duct, which they believed to be the abandoned duct for which they were looking, he exposed a section of plastic covered cable. Apparently, two of the telephone company's employees were on the scene at the time, and they were asked to examine the uncovered cable. Both Kimball and plaintiff were surprised that their digging had uncovered any cable, since the drawing showed electric cables to be some twenty feet away on one side of where they were digging and also showed telephone line to be some fifteen feet on the other side. The deposition testimony varies as to whether the exposed cable was positively identified as telephone cable, or whether that possibility was suggested. At any rate, the telephone company employees did indicate that it did not appear that the cable was damaged, and they went away to a certain building to make some tests.

Upon their return, they assured Kimball and plaintiff that no damage had been done to telephone communications. Thereupon, plaintiff and Kimball determined to continue with their digging, going on the side of and beneath the section of exposed cable, in their search for the abandoned duct. Plaintiff took over the jackhammer and shortly thereafter penetrated the high voltage cable which caused his injury. The drawings which plaintiff had examined before beginning the work showed that there were four different electrical cables in the ground, supposedly some twenty feet away from where they were digging. After the accident, it was determined that the first cable exposed was indeed one of the high voltage electrical cables. There is no testimony that the telephone company employees were aware that there were any high voltage electrical cables in the vicinity.

While, as indicated, the testimony is not clear as to whether the exposed cable was positively identified as telephone cable, for the purpose of this review we assume a factual conclusion most favorable to plaintiff, that it was positively so identified. Plaintiff contends that he was misled to his detriment by this misidentification. In their brief, appellants agree that if this appellee's employees had simply said, "It isn't our cable; we have no concern," it would have had no liability. The trial court based its decision on its conclusion that under the facts, the telephone company had no duty to plaintiff; and secondly, even if it had some duty, it could not have foreseen that its breach of that duty in the manner testified to could have caused any injury to plaintiff.

In support of their contention that the telephone company owed some duty to plaintiff, appellants rely primarily on *Thompson* v. *Ohio Fuel Gas Co.* (1967), 9 Ohio St. 2d 116 [38 O.O.2d 294]. There, defendant had placed a gas line under a certain road. The line was not sufficiently deep and plaintiff's decedent, an employee of a company, engaged in

routine maintenance of the ditch adjacent to the road, while operating a grader, struck the line and breached it, causing an explosion which killed him. In reversing a directed verdict for defendant, the Supreme Court stated that, as evidenced by the seriousness of the occurrence itself, since defendant was charged with knowledge of the location of its own pipe, it should have foreseen the danger which caused the plaintiff's decedent's death. Appellants argue that the telephone company here was also charged with the knowledge of the location of their own cable, and that its failure to advise plaintiff of the correct location of those lines was not the act of a prudent man.

There exists, however, a material distinction in the facts of the *Thompson* case and the case *sub judice*. There, the gas pipe which caused the death of plaintiff's decedent belonged to the defendant Ohio Fuel Gas Company. In our case, the electrical cable which caused plaintiff's injury was not the property of the General Telephone Company, and therefore, it was not charged with knowledge of the location of those high voltage cables.

It is well-settled that where one undertakes an act which he has no duty to perform and another reasonably relies on that undertaking, the act must generally be performed with ordinary care. 39 Ohio Jurisprudence 2d 499, Negligence, Section 12. Here, although having no duty so to do, the telephone company employees undertook to advise plaintiff concerning the character of the uncovered cable. From the blueprints he had examined, plaintiff knew that there were supposed to be electrical cables twenty feet to one side of where they were digging, and that there was supposed to be a telephone cable some ten feet on the other side. Being reliably advised that the cable uncovered contained telephone wire, it was

reasonable for him to assume that he was not near any electrical cables.

Even if the telephone company, through its employees, was negligent in misleading plaintiff as to the nature of the uncovered cable, and even if that negligence proximately caused plaintiff's injury, this appellee's liability depends upon whether that injury could have been foreseen. In contemplation of law, an injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable. *Id.* at 532-533, Section 30.

Since the telephone company employees did not know anything about the possible proximity of high voltage electrical cables, it could not have recognized that there was any danger to plaintiff from such cables. Foreseeability is an essential element to charge the telephone company with any liability for the negligence of its employees in giving a misleading statement to plaintiff. Proof of that foreseeability being absent, General Telephone Company has no liability for plaintiff's injury, and the appellants' fifth assignment of error is overruled.

The judgment of the Butler County Court of Common Pleas will be sustained as to appellee Wente and as to appellee General Telephone Company, and otherwise will be reversed and remanded to the court of common pleas for further proceedings in accordance with law and this opinion.

*Judgment accordingly.*

HENDRICKSON, P.J., and KOEHLER, J., concur.

ZIEGEL, J., retired, of the Court of Common Pleas of Preble County, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.