**BEST, Appellant,**

**v.**

**ENERGIZED SUBSTATION SERVICE, INC.; Dayton Power and Light Company, Appellee.**

[Cite as *Best v. Energized Substation Serv., Inc.* (1993), 88 Ohio App.3d 109.]

Court of Appeals of Ohio,
Lorain County.

No. 92CA005457.

Decided June 2, 1993.

*John D. Rodman* and *Louis Liczta;  Robert Fogarty* and *Andrew Pollis*, for appellant.

*William P. Farral* and *William M. Crosby,* for appellee.

---

REECE, Judge.

Plaintiff-appellant, Gregory L. Best, appeals the trial court's decision granting summary judgment in favor of defendant-appellee, Dayton Power & Light Company ("Dayton Power"), on Best's claims of negligence, strict liability and statutory violations.   We affirm.

Best was an employee of Energized Substation Service, Inc. ("ESS"), a company that specializes in painting electrical substations.   In February 1989, Dayton Power contracted with ESS to paint a substation in Vandalia, Ohio.   Best was assigned to work at the Vandalia substation.   According to Best's depositions, he understood that his job was particularly dangerous because of his close proximity to high voltage equipment.

On October 9, 1989, Best was painting on a steel structure.   The structure itself was not energized but the potheads attached to it were.   Best was painting above Leland Goss, the president of ESS.   Best claims that Goss intentionally sprayed paint near his foot causing him to slip and come in contact with an energized pothead.   Best received a severe electrical shock and suffered injuries.

On September 28, 1990, Best filed a complaint against ESS, Dayton Power and Goss.   Best's claims against ESS and Goss were based on intentional tort, while those against Dayton Power sounded in negligence, strict liability and a violation of R.C. 4101.11, Ohio's frequenter statute.   This statute requires Ohio employers to keep a safe place of employment for their employees and frequenters of the work place.   Dayton Power moved for summary judgment, which was granted by the trial court on June 5, 1992.   Best appeals, raising five assignments of error.

## Assignment of Error I

"The trial court erred in dismissing Greg Best's fourth cause of action based on the Ohio Frequenter Statute because there is a genuine issue of material fact as

to whether DP & L actively participated in the painting process and whether DP & L exercised due care in eliminating a hazard from the job site when DP & L failed to de-energize its electrical substation."

*Standard of Review for Summary Judgment*

Ohio courts have established a three-part test to determine if summary judgment is properly granted pursuant to Civ.R. 56. A court may grant summary judgment if it finds:

"(1) No genuine issue as to any material facts remains to be litigated;

"(2) the moving party is entitled to judgment as a matter of law; and

"(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273; see, also, *Delker v. Ohio Edison Co.* (1989), 47 Ohio App.3d 1, 2, 546 N.E.2d 975, 976.

■ The moving party carries the burden of proof when requesting a summary judgment. *Hamlin v. McAlpin Co.* (1964), 175 Ohio St. 517, 26 O.O.2d 206, 196 N.E.2d 781, paragraph two of the syllabus; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. However, once summary judgment is requested, the responding party must set forth specific facts demonstrating triable issues on all essential matters for which he bears the initial burden of proof. Mere reliance upon the pleadings is insufficient. Civ.R. 56(E); see, also, *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323–326, 106 S.Ct. 2548, 2552–2554, 91 L.Ed.2d 265, 274–275.

■ In summary judgment proceedings all inferences to be drawn from the materials submitted must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 152, 66 O.O.2d 311, 312, 309 N.E.2d 924, 926; *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 105–106, 19 OBR 261, 265–266, 483 N.E.2d 150, 154–155. The issue to be tried must also be genuine, allowing reasonable minds to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–253, 106 S.Ct. 2505, 2509–2513, 91 L.Ed.2d 202, 211–214. The existence of a mere scintilla of evidence in support of a plaintiff's position is insufficient to survive a motion for summary judgment. *Id.*

*R.C. 4101.11 —— Ohio's Frequenter Statute*

■ R.C. 4101.11 is the codification of the common-law duty that owners of properties owe their invitees to keep the premises in a safe condition and to warn

of dangers of which the owner has knowledge. *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 249, 512 N.E.2d 1165, 1167, provides:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

However, the duty mandated by this statute "does not extend to hazards which are inherently and necessarily present because of the nature of the work performed, where the frequenter is the employee of an independent contractor." *Eicher,* 32 Ohio St.3d 248, 512 N.E.2d 1165, syllabus. Working around powerful electrical fields involves an inherent danger. *Gordon v. Ponderosa, Inc.* (Apr. 26, 1991), Portage App. No. 90–P–2195, unreported, at 2, 1991 WL 70114.

Despite the *Eicher* holding, Dayton Power would still owe Best a duty of care if it actively participated in the job operation. *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189, explaining and limiting *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326. Participation does not involve a mere supervisory role. *Cafferkey,* 21 Ohio St.3d at 113, 21 OBR at 418–419, 488 N.E.2d at 192. Thus, to establish a cause of action in negligence, a landowner must direct or interfere with the independent contractor's performance. *Id.; Gordon, supra.*

In this case, Best has not shown that Dayton Power actively participated in the painting of the substation. While he points to a number of contractual clauses that require ESS to carry out safe operations, and statements by a Dayton Power official that he was concerned about ESS's operations, concern for safety does not constitute active participation. *Cafferkey,* 21 Ohio St.3d at 113, 21 OBR at 418–419, 488 N.E.2d at 192. Best testified during deposition that he received his orders from ESS supervisors. Leland Goss, president of ESS, confirmed Best's testimony. The action that Best complains led to his injuries, the failure to turn off the electricity at the substation, was in the control of ESS. It was uncontradicted that Dayton Power would shut down the substation at ESS's request. Best's first assignment of error is without merit.

## Assignment of Error II

"The trial court erred in dismissing Greg Best's sixth cause of action because genuine issues of material fact exist as to whether DP & L voluntarily assumed

the duty to hire and employ safe and competent painting contractors, and whether DP & L breached this voluntarily assumed duty since they [*sic*] knew of prior incidents involving energized substation systems and did nothing to prevent future incidents."

In his second assignment of error, Best claims Dayton Power was negligent in hiring ESS. Other jurisdictions have found that an employee of an independent contractor may not maintain an action for negligent hiring against the principal. *Mentzer v. Ognibene* (1991), 408 Pa.Super. 578, 585–589, 597 A.2d 604, 608–609; *Payne v. Lee* (E.D.Tenn.1988), 686 F.Supp. 677, 679, affirmed (C.A.6, 1989), 872 F.2d 1027; *Wagner v. Continental Cas. Co.* (1988), 143 Wis.2d 379, 388–390, 421 N.W.2d 835, 839; *Ray v. Schneider* (1988), 16 Conn.App. 660, 670–674, 548 A.2d 461, 467–468; *Woodson v. Rowland* (1988), 92 N.C.App. 38, 46, 373 S.E.2d 674, 679, reversed in part on other grounds (1991), 329 N.C. 330, 407 S.E.2d 222; *Chapman v. Black* (1987), 49 Wash.App. 94, 103, 741 P.2d 998, 1004.

■ A number of these decisions rely on Restatement of the Law 2d, Torts (1965) 376, Section 411. That section recognizes liability to "third persons" for negligent selection of an independent contractor. None of the illustrations accompanying Section 411 of the Restatement involves an employee of the independent contractor maintaining an action against the principal. We find that a principal cannot be held liable by an independent contractor's employee for negligent selection of the independent contractor.

■ Even if this court were to allow an action for negligent selection, Best's claim would fail. He asserts that Dayton Power voluntarily assumed a duty to hire a competent independent contractor. When one voluntarily assumes a duty to perform, and another reasonably relies on that assumption, the act must be performed with ordinary care. *Northwest Airlines, Inc. v. Glenn L. Martin Co.* (C.A.6, 1955), 224 F.2d 120, 127–128, certiorari denied (1956), 350 U.S. 937, 76 S.Ct. 308, 100 L.Ed. 818; *Elliott v. Fosdick & Hilmer, Inc.* (1983), 9 Ohio App.3d 309, 314, 9 OBR 575, 580–581, 460 N.E.2d 257, 263. See, generally, 70 Ohio Jurisprudence 3d (1986) 56, Negligence, Section 15. In essence, Best would need to claim that he worked at the Vandalia substation because he relied on Dayton Power to hire competent independent contractors. He failed to produce any evidence to support such a contention; thus, his second assignment of error is without merit.

## Assignment of Error III

"The trial court erred in dismissing Greg Best's fifth cause of action because a genuine issue of material fact exists as to whether DP & L voluntarily assumed

the duty to provide safety personnel, and whether DP & L breached this voluntarily assumed duty."

■ Best next asserts that Dayton Power voluntarily assumed a duty to provide safety personnel. Again we note the lack of evidence of Best's reliance on Dayton Power's alleged assumption of duty.

■ Further, the acts taken by Dayton Power in occasionally providing safety personnel on job sites, attending ESS's meetings to monitor that company's progress on job-site safety, and examining the possibility of taking items out of service at substations ESS was working, were no more than an expression of Dayton Power's general interest in safety. General interest in safety, without more, does not result in "active participation" in job operation. *Curless v. Lathrop Co.* (1989), 65 Ohio App.3d 377, 385–386, 583 N.E.2d 1367, 1372–1374. Nor do we find that it gives rise to an assumption of a duty to ensure safety by employing safety personnel to an independent contractor. These minimal steps to provide a safe work place should be encouraged, not found to impose civil liability. Best's third assignment of error is without merit.

## Assignment of Error IV

"The trial court erred in dismissing Greg Best's seventh cause of action that DP & L breached its non-delegable duty because painting electrical substations is an ultrahazardous activity and DP & L did not take reasonable precautions to prevent injury because DP & L failed to de-energize its electrical substation resulting in serious injury to Greg Best."

Best asserts that painting electrical substations is an inherently dangerous activity and therefore Dayton Power was under a nondelegable duty to provide a safe workplace. In *Eicher*, 32 Ohio St.3d 248, 512 N.E.2d 1165, syllabus, the Ohio Supreme Court recognized that a landowner, who does not actively participate in the performance of the contracted work, has no duty of care to an employee of an independent contractor to protect against the hazards involved in the nature of the work. Thus under *Eicher*, a principal owes no duty to the employee of an independent contractor hired to perform an inherently dangerous activity. The Supreme Court has refused to even acknowledge a duty of ordinary care.

■ The principal does owe a nondelegable duty to third persons who are harmed by independent contractors performing inherently dangerous acts. *St. Julian v. Owens–Illinois, Inc.* (1978), 59 Ohio Misc. 66, 76, 394 N.E.2d 359, 364–365; *Covington & Cincinnati Bridge Co. v. Steinbock & Patrick* (1899), 61 Ohio St. 215, 55 N.E. 618, paragraph one of the syllabus. However, as this duty does not extend to the employees of independent contractors, Best's fourth assignment of error is without merit.

Assignment of Error V

"The trial court erred in dismissing Greg Best's eighth cause of action that DP & L is strictly liable in tort because the production and distribution of electricity constitutes an absolute nuisance and DP & L failed to de-energize its electrical substation resulting in serious injury to Greg Best."

Best bases this argument on the theory that the production of electricity is an absolute nuisance. Best correctly asserts that electricity is inherently dangerous. However, as previously stated, an employee of an independent contractor cannot recover under a theory of negligence when the work performed involves an inherent danger. *Eicher* and *Cafferkey, supra.* It would be incongruous to say a principal cannot be liable under a negligence theory and then hold that same principal strictly liable.

The fifth assignment of error is overruled. The trial court's judgment is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and DICKINSON, J., concur.