HOLMES et al., Appellants,

v.

COMMUNITY COLLEGE OF CUYAHOGA COUNTY et al., Appellees.

[Cite as *Holmes v. Community College of Cuyahoga Cty.* (1994), 97 Ohio App.3d 678.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 66025.

Decided Aug. 11, 1994.

*Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A., Michael V. Kelley, John A. Sivinski, Jack L. Petronelli* and *Michael A. Iacobelli, Jr.,* for appellants.

*Benesch, Freidlander, Coplan & Arnoff* and *Stephen D. Williger,* for appellee Community College of Cuyahoga County.

*Michael L. Clark,* for appellee Precision Electric, Inc.

KRUPANSKY, Judge.

Plaintiffs-appellants Susan and Patrick Holmes appeal from an order of the trial court granting summary judgment in favor of defendants-appellees the Community College of Cuyahoga County ("CCC") and Precision Electric, Inc. on statute of limitations grounds.

Plaintiffs filed a two-count complaint against defendants for personal injury and loss of consortium in the trial court January 24, 1992. Plaintiffs alleged Susan Holmes received an electric shock five years earlier on January 23, 1987 during the course of her employment on a project at CCC. At the time of the accident, plaintiff was an owner of her own electrical company, *i.e.,* Hiesley Electric, Inc., and was also working as a journeyman electrician for said company. The complaint alleged Susan Holmes "sustained serious and permanent injuries, including but not limited to irregular heartbeats" which did not become

immediately manifest at the time of the electric shock. Plaintiffs alleged defendants were negligent and joined a claim for loss of consortium by Patrick Holmes.

Defendants filed separate answers denying the substantive allegations of plaintiffs' complaint, asserted various affirmative defenses and raised cross-claims for indemnity against each other. CCC's answer, and Precision Electric's amended answer, *inter alia*, raised the defense that plaintiffs' action was barred by the two-year personal injury statute of limitations since the incident occurred five years prior to the filing of plaintiffs' complaint. The record demonstrates the trial court denied defendants' separate motions to dismiss plaintiffs' complaint on statute of limitations grounds in orders journalized August 27, 1992 and September 14, 1992, respectively.

CCC thereafter filed a motion for summary judgment on statute of limitations grounds November 25, 1992, supported by the following documents, *viz.*: (1) excerpts from the unfiled deposition of plaintiff Susan Holmes; (2) workers' compensation claim forms submitted by Susan Holmes for injuries to her·left hand and eye from the January 23, 1987 incident; (3) workers' compensation claim records concerning other injuries filed by Susan Holmes; and (4) medical records from Susan Holmes' gynecologist, Lucille Stine, M.D., and her family physician, Larry Boulware, M.D., noting the existence of her heart palpitations more than two years prior to the filing of plaintiffs' complaint on January 24, 1992.

Precision Electric thereafter filed its motion for summary judgment on statute of limitations grounds pursuant to leave of court based on the following documents, *viz.*: (1) emergency room medical treatment records of January 23, 1987 for Susan Holmes on the date of the electric shock; (2) a copy of notes from Dr. Boulware noting Susan Holmes' heart palpitations; (3) a copy of letters from Drs. Tony Simmons, M.D., James Lane, M.D., and Lucille Stine, M.D., concerning Susan Holmes' heart condition; and (4) excerpts from the unfiled deposition testimony of Susan Holmes.

Plaintiffs filed a single brief in opposition to defendants' motions for summary judgment which admitted knowledge of her heart condition "in late 1989" more than two years prior to filing her complaint on January 24, 1992. However, plaintiffs argued Susan Holmes had no knowledge that her heart condition was related to the electric shock until "March 1990" when informed by Dr. Boulware, which was less than two years prior to filing her complaint. Plaintiffs' brief in opposition was supported by the following documents, *viz.*: (1) an affidavit from Susan Holmes; (2) an affidavit from Dr. Boulware; (3) a copy of plaintiffs' complaint; (4) a copy of reports by psychologist George Ritz, Jr., Ph.D.; and neuropsychologist John Kenny, Ph.D., concerning post-traumatic stress disorder and cognitive impairment allegedly related to the January 23, 1987 electric shock;

and (5) a letter from Dr. Mark Carlson, M.D., retained by defendant Precision Electric stating to a reasonable degree of medical certainty that Susan Holmes' heart condition was idiopathic and not caused by the electric shock. Plaintiffs' brief in opposition to defendants' motions for summary judgment did not raise any objection to any of the exhibits attached to defendants' motions.

Defendants thereafter filed reply briefs January 6, 1993, raising various additional legal arguments and challenged the admissibility of certain exhibits offered by plaintiffs in opposition to summary judgment. Plaintiffs in turn filed on January 19, 1993, the date of the oral hearing on the motions for summary judgment, a belated one paragraph "Motion to Suppress" all the exhibits attached to defendants' motions for summary judgment. The record demonstrates the certificate of service accompanying plaintiffs' "motion to suppress" indicated service by hand delivery on only Precision Electric and did not indicate service on CCC.

The trial court subsequently denied plaintiffs' motion to suppress defendants' exhibits, granted defendants' motions for summary judgment and dismissed plaintiffs' complaint following an oral hearing in orders journalized January 20, 1993. This court of appeals dismissed plaintiffs' prior appeal since the trial court expressly reserved jurisdiction over Precision Electric's motion for sanctions against plaintiffs. *Holmes v. Community College of Cuyahoga Cty.* (May 19, 1993), Cuyahoga App. No. 65106, unreported. The trial court thereafter denied Precision Electric's motion for sanctions in an order journalized August 4, 1993. Plaintiffs timely appeal in case No. 66025, raising two assignments of error.

Plaintiffs' first assignment of error follows:

"The trial court erred to the prejudice of the plaintiffs-appellants in granting the defendants-appellees' motions for summary judgment."

Plaintiffs' first assignment of error lacks merit.

█ Plaintiffs contend the trial court improperly granted summary judgment in favor of defendants on statute of limitations grounds. Plaintiffs argue the two-year personal injury statute of limitations set forth in R.C. 2305.10 did not commence running when she reported her heart palpitations to Dr. Stine on May 22, 1989, but rather commenced in March 1990 when Dr. Boulware subsequently informed her of an alleged causal relationship between her heart condition and the electric shock.

R.C. 2305.10 establishes a two-year statute of limitations for bodily injury claims and provides in its entirety as follows:

"An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose.

"For purposes of this section, a cause of action for bodily injury caused by exposure to asbestos or to chromium in any of its chemical forms arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured by such exposure, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured by the exposure, whichever date occurs first.

"For purposes of this section, a cause of action for bodily injury incurred by a veteran through exposure to chemical defoliants or herbicides or other causative agents, including agent orange, arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured by such exposure.

"As used in this section, 'agent orange,' 'causative agent,' and 'veteran' have the same meanings as in section 5903.21 of the Revised Code.

"For purposes of this section, a cause of action for bodily injury which may be caused by exposure to diethylstilbestrol or other nonsteroidal synthetic estrogens, including exposure before birth, arises upon the date on which the plaintiff learns from a licensed physician that he has an injury which may be related to such exposure, or upon the date on which by the exercise of reasonable diligence he should have become aware that he has an injury which may be related to such exposure, whichever date occurs first."

The sole issue raised by plaintiffs' first assignment of error is whether the trial court correctly determined when the two-year statute of limitations commenced prior to granting summary judgment for defendants in the case *sub judice.*

The record *sub judice* demonstrates following the electric shock on January 23, 1987 Susan Holmes received emergency medical treatment at Hillcrest Hospital for a second degree burn to her left hand and blurred vision in her left eye. Susan Holmes testified during her deposition that she requested an EKG to monitor her heartbeat during the emergency room examination since she was concerned about injury to her heart. Susan Holmes stated by affidavit that no injury to her heart was discovered at that time. Susan Holmes applied for workers' compensation benefits for the second degree burn and impaired vision on March 24, 1987.

Medical records indicate Susan Holmes subsequently reported "palpitations" to her gynecologist Dr. Lucille Stine for the first time on May 22, 1989, approximately two years and four months after the electric shock. Dr. Stine referred Susan Holmes to her family physician Dr. Boulware who likewise reported "Ht. Palpitations" in his May 30, 1989 treatment notes. Medical records for subsequent visits to Dr. Boulware on December 7, 1989 and by Dr. Stine on January 15, 1990 likewise refer to her "heart palpitations" and "palpitations." All four of

these visits by Susan Holmes to her physicians Stine and Boulware concerning her heart palpitations from May 22, 1989 to January 15, 1990 occurred more than two years prior to filing the case *sub judice* on January 24, 1992.

Dr. Boulware subsequently referred Susan Holmes to various specialists. Dr. Simmons, a cardiologist, reported by letter to Dr. Boulware March 1, 1990 that he ruled out various possible causes for Susan Holmes' heart condition and believed the condition was "idiopathic," [1] but indicated, among other "possibilities," the "electrical shock raises a question of could this have caused some problems with her atrial arrhythmia." The affidavit of Dr. Boulware submitted by plaintiffs in opposition to summary judgment refers to this letter and states as follows:

"5. That by letter dated March 1, 1990, Dr. Simmons disclosed to him that extensive testing ruled out various potential causes of the heart problems such as thyroid disease, pheochromocytoma, tumors and other standard causes and raised the possibility that the January 23, 1987 electrical shock may have been the cause of Susan Holmes' atrial fibrillation.

"6. That on or about March, 1990 he advised, for the first time, Susan Holmes of his suspicion that the January 23, 1987 electrical shock was the cause of the atrial fibrillation and his opinion that such electrical shock was the cause of her atrial fibrillation."

Plaintiffs filed the complaint *sub judice* January 24, 1992, approximately two years and eight months following the first report of Susan Holmes' heart palpitations on May 22, 1989, and argue this extended delay should be excused because Susan Holmes did not receive a medical opinion until March 1990 that her heart condition was caused by the electric shock five years earlier.

However, one reported court of appeals' opinion indicates that a cause of action based on an electric shock arises on the date of the electric shock when bodily injury first manifests itself as in the case *sub judice*. See *Elliott v. Fosdick & Hilmer, Inc.* (1983), 9 Ohio App.3d 309, 9 OBR 575, 460 N.E.2d 257. Susan Holmes clearly sustained immediate physical injuries to her hand and eye from her single exposure to an electrical shock on January 23, 1987. She also requested an EKG on that date to monitor and evaluate her heart due to her knowledge of the potential association between heart injuries and electric shocks. As a result, her cause of action for any and all bodily injury from the electric shock "arose" for purposes of R.C. 2305.10 on January 23, 1987.

---

1. The term "idiopathic" is defined as peculiar to the individual or arising spontaneously or from an obscure or unknown cause. See *Waller v. Mayfield* (1988), 37 Ohio St.3d 118, 121, 524 N.E.2d 458, 461, fn. 2.

■ We note that even if plaintiffs' claims for her heart condition did not arise on the date of the electric shock, plaintiffs have failed to demonstrate the discovery rule governing actions for bodily injury under R.C. 2305.10 excuses the extended delay in filing the case *sub judice*. The Ohio Supreme Court has recently summarized the principles governing the discovery rule and commencement of the bodily injury statute of limitations as follows:

"1. Absent legislative definition, it is left to the judiciary to determine when a cause 'arose' for purposes of statutes of limitations.

"2. When an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he had been injured by the conduct of defendant, for purposes of the statute of limitations contained in R.C. 2305.10." *Browning v. Burt* (1993), 66 Ohio St.3d 544, 558–559, 613 N.E.2d 993, 1004–1005 (quoting and applying paragraphs one and two of the syllabus of *O'Stricker v. Jim Walter Corp.* [1983], 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727).

The *Browning* court discussed the analogous principles governing medical malpractice cases to determine when a cause of action "arose" for purposes of commencing the R.C. 2305.10 statute of limitations for bodily injury claims. Medical malpractice cases apply the "cognizable event" test to determine when a medical malpractice claim "accrues." *Id.*, 66 Ohio St.3d at 559–560, 613 N.E.2d at 1005–1006. These cases recognize that the occurrence of a "cognizable event" imposes on plaintiff the duty to (1) determine whether any injury suffered is the proximate result of negligence, and (2) ascertain the identity of the tortfeasor(s). *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 589 N.E.2d 1284, syllabus. The Supreme Court in *Browning* concluded by holding that an analogous "alerting event" standard governed claims for bodily injury pursuant to the R.C. 2305.10 statute of limitations. *Id.*, 63 Ohio St.3d at 558–561, 613 N.E.2d at 1004–06.

The record demonstrates the electric shock in the case *sub judice* occurred approximately five years prior to plaintiffs' filing of the complaint on January 24, 1992. Susan Holmes was aware that electricity could damage her heart as early as January 23, 1987 when she requested an EKG in the emergency room the date she sustained the electric shock. On May 22, 1989, or approximately two years and eight months prior to filing the complaint, she reported heart palpitations to her physician Dr. Stine. Knowledge of her heart condition clearly imposed upon plaintiffs the duty to determine whether any injury suffered was the proximate result of negligence and to ascertain the identity of the tortfeasor(s). See *Flowers v. Walker, supra.* Susan Holmes testified during her deposition that she in fact ascertained the identity of Precision Electric as a potential tortfeasor within days of the electric shock in January 1987 when she returned to the premises of CCC to investigate the reason for the electric shock.

Plaintiffs' contention the two-year statute of limitations did not commence until March 1990 when Dr. Boulware identified the electrical shock as a potential cause of Susan Holmes' heart condition lacks merit. Susan Holmes admitted during her deposition testimony that she requested an EKG on the date of the electric shock because she knew of the potential link between heart conditions and electric shocks. The affidavit of Susan Holmes specifically admitted knowledge of her heart condition "in late 1989." These statements bring plaintiffs squarely within paragraph two of the syllabus in *O'Stricker* governing the commencement of the two-year statute of limitations as follows:

"When an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows *or, by the exercise of reasonable diligence should have known,* that he had been injured by the conduct of defendant, for purposes of the statute of limitations contained in R.C. 2305.10." (Emphasis added.)

Plaintiffs were put on notice and knew, or by the exercise of reasonable diligence should have known, by Susan Holmes' four visits to her physicians regarding her heart palpitations on May 22, 1989, May 30, 1989, December 7, 1989 and January 15, 1990, that her heart condition may have been caused by the occurrence of January 23, 1987. The two-year bodily injury statute of limitations began to run on May 22, 1989 when Susan Holmes knew or, by the exercise of reasonable diligence should have known, the connection between the electrical shock and her atrial fibrillation. To permit plaintiffs' arguments to the contrary would emasculate the statutory limitations and permit individuals to set their own statute of limitations by filing their cause of action at their own convenience.

Accordingly, plaintiffs' first assignment of error is overruled.

Plaintiffs' second assignment of error follows:

"The trial court erred to the prejudice of the plaintiffs-appellants in failing to grant the motion to exclude the exhibits attached to the motions for summary judgment of defendant-appellees."

Plaintiffs' second assignment of error lacks merit.

Plaintiffs contend the trial court erred by denying their "Motion to Suppress" the exhibits attached to defendants' motions for summary judgment since the deposition testimony of Susan Holmes was not filed with the trial court and the exhibits did not comply with Civ.R. 56. However, based on our review of the record, plaintiffs have failed to exemplify any error.

Plaintiff's motion to suppress the exhibits attached to defendants' motions for summary judgment was not served until the afternoon of the oral hearing on the motions for summary judgment. The certificate of service accompanying plain-

tiffs' motion to suppress indicated service was completed by hand delivery on only defendant Precision Electric. The record contains no certificate of service indicating completed service on defendant CCC "endorsed thereon or separately filed." Civ.R. 5(D) expressly prohibits the trial court from considering such materials filed without written proof of service as follows:

" * * * Papers filed with the court *shall not be considered* until proof of service is endorsed thereon or separately filed." (Emphasis added). See *In the Matter of Rose* (May 21, 1992), Cuyahoga App. No. 62493, unreported, 1992 WL 110289.

This rule is mandatory and is required to comply with due process despite no denial of receipt by the opposing party.

This defect in service was compounded by the untimely filing of plaintiffs' motion to suppress in the trial court on January 19, 1993 at 1:58 p.m., the date of the oral hearing on defendants' motions for summary judgment. The record demonstrates plaintiffs raised no objection to the exhibits attached to defendants' motions for summary judgment at the first available opportunity. Plaintiffs' brief in opposition to defendants' motions for summary judgment filed one month earlier on December 23, 1992, three weeks following defendants' motions for summary judgment, did not raise any issue concerning the admissibility of the exhibits attached to defendants' motions for summary judgment.

■ However, plaintiffs thereafter belatedly raised their objections for the first time on January 19, 1993, approximately seven weeks after the filing of defendants' motions for summary judgment, on the afternoon of the oral hearing scheduled on defendants' motions for summary judgment. It is well established that a trial court may consider material attached to a motion for summary judgment when the opponent fails to raise a *timely* objection as in the case *sub judice*. See *Rodger v. McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App.3d 256, 258, 8 OBR 347, 349–50, 456 N.E.2d 1262, 1265, fn. 7. In addition, plaintiffs' last-minute one-paragraph motion to suppress was designed to unfairly deprive defendants of the opportunity to correct any technical defects concerning the exhibits. Under the circumstances, plaintiffs have failed to demonstrate the trial court erred or abused its discretion by denying their belated one-paragraph motion to suppress evidence on these grounds.

Finally, it should be noted that plaintiffs have cited absolutely no authority recognizing a "motion to suppress" evidence in a civil case in this context. Even if such a motion to suppress were cognizable in this context, error, if any, in denying plaintiffs' motion did not result in any prejudice since *the evidence submitted by plaintiffs* in opposition to summary judgment expressly admitted Susan Holmes knew of her heart condition "in late 1989" more than two years prior to filing the case *sub judice*. As noted above, the two-year statute of

limitations commenced on May 22, 1989, the date of the heart palpitations reported to Dr. Stine, and not the date of March 1990, when Susan Holmes was subsequently informed by Dr. Boulware of an alleged causal connection between her heart condition and the January 23, 1987 electrical shock.

Accordingly, plaintiffs' second assignment of error is overruled.

*Judgment affirmed.*

SPELLACY, P.J., and JAMES D. SWEENEY, J., concur.