OPINION
The Dayton Board of Education and the Dayton City Schools appeal from a judgment of the Montgomery County Court of Common Pleas which granted the Dayton Boys and Girls Club's motion for summary judgment.
The record reveals as follows. The Dayton Boys and Girls Club was founded in the 1930s as a recreation facility. It currently serves as a youth development center, offering educational, health, and recreational programs for children and young adults. During the school year, the Dayton Boys and Girls Club holds early morning and evening programs for children in school. Children who participate in the programs either walk, are driven by their parents, ride the Regional Transit Authority buses, or ride Dayton City Schools buses to the Dayton Boys and Girls Club.
After school on December 1, 1998, a Dayton City Schools bus dropped off six-year-old Walter Pendleton, Jr. ("Walter") and another boy in front of the Dayton Boys and Girls Club. The bus dropped the boys off on the north side of West Stewart Street and the Dayton Boys and Girls Club was located on the south side of West Stewart Street. As the boys crossed the street heading toward the Dayton Boys and Girls Club, Walter noticed that his shoe was untied and stopped to tie it. The bus driver failed to notice Walter's actions and drove forward, hitting Walter. Walter died as a result of his injuries.
On March 31, 2000, Deborah and Walter Pendleton, Sr. filed a complaint against the Dayton Board of Education and the Dayton City Schools. With leave of the court, the Pendletons filed an amended complaint on June 9, 2000, adding the Dayton Boys and Girls Club as defendants in the case.
On October 24, 2000, the Dayton Boys and Girls Club filed a motion for summary judgment. The trial court granted that motion on January 4, 2001. On January 19, 2001, the trial court filed an entry that officially dismissed the Dayton Boys and Girls Club as a party in the case and explicitly stated that neither the Pendletons nor the Dayton Board of Education and Dayton City Schools were to receive compensation from the Dayton Boys and Girls Club.
On March 21, 2001, the Pendletons, Dayton Board of Education, and Dayton City Schools filed an agreed entry of dismissal stating that all disputes between the parties had been resolved and were dismissed with prejudice. On March 23, 2001, the Dayton Board of Education and the Dayton City Schools filed a notice of appeal of the trial court's judgment granting the Dayton Boys and Girls Club's motion for summary judgment. The Dayton Board of Education and the Dayton City Schools assert a single assignment of error.
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT DAYTON BOYS GIRLS CLUB'S MOTION FOR SUMMARY JUDGMENT[.]
The Dayton Board of Education and the Dayton City Schools present three arguments in this assignment of error. First, they argue that a genuine issue of material fact existed regarding whether the Dayton Boys and Girls Club assumed and breached a duty of reasonable care to Walter. Second, they argue that there was a genuine issue of material fact regarding whether the club's negligence proximately caused the child's death. Third, they argue that a genuine issue of material fact existed regarding whether the Dayton Boys and Girls Club breached a duty of care to ensure that the child safely crossed the street pursuant to O.A.C. 5101:2-12-46.
Our review of the trial court's decision to grant summary judgment to the Dayton Boys and Girls Club is de novo. Helton v. Scioto Cty. Dayton Board of Education. of Commrs. (1997), 123 Ohio App.3d 158, 162,703 N.E.2d 841, 843, discretionary appeal not allowed (1998),81 Ohio St.3d 1432, 689 N.E.2d 51. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Dayton Board of Education. (1997), 78 Ohio St.3d 181, 183,677 N.E.2d 343, 345; Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 65-66, 375 N.E.2d 46, 47. The moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280,293, 662 N.E.2d 264, 274. If the moving party satisfies its initial burden, "the nonmoving party then has a reciprocal burden * * * to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id.; see Civ.R. 56(E).
"In order to recover on a negligence claim, a plaintiff must prove (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach of the duty proximately caused the plaintiff's injury." Chambers v. St. Mary's School (1998),82 Ohio St.3d 563, 565, 697 N.E.2d 198, 200.
The trial court in this case concluded that the Dayton Boys and Girls Club had not been negligent because it had not had a duty to meet Walter at the bus stop or to see Walter safely across the street. The Dayton Board of Education and Dayton City Schools argue that the trial court erred in its judgment because the Dayton Boys and Girls Club voluntarily assumed a duty to see Walter safely across the street and into the club.
"It is well established that `[w]hen one voluntarily assumes a duty to perform, and another reasonably relies on that assumption, the act must be performed with ordinary care.'" (Emphasis added.) Johnson v. BP Exploration Oil, Inc. (1996), 115 Ohio App.3d 266, 269-270,685 N.E.2d 275, 277, quoting Best v. Energized Substation Serv., Inc. (1993), 88 Ohio App.3d 109, 115, 623 N.E.2d 158, 162; see Elliott v. Fosdick Hilmer, Inc. (1983), 9 Ohio App.3d 309, 314, 460 N.E.2d 257,263.
Assuming, arguendo, that the Dayton Boys and Girls Club did assume a duty to ensure Walter's safety while crossing the street, there is no evidence in the record that either Walter or Walter's parents reasonably relied on that assumed duty. In fact, Walter's mother testified that after talking with the school transportation department, she had expected the school bus to drop Walter off at the curb in front of the Dayton Boys and Girls Club, not at the curb across the street from the club. She said that she had expected someone at the Dayton Boys and Girls Club to "be waiting to take [Walter] in," but that she had not relied upon the Dayton Boys and Girls Club to ensure Walter's safety while crossing the street. She also stated that she did not personally feel that the Dayton Boys and Girls Club was responsible for causing Walter's death because had the bus driver dropped Walter off at the proper curb, the accident would not have occurred. Walter's father testified, similarly, that he did not believe that the Dayton Boys and Girls Club was responsible for his son's death. Thus, assuming the Dayton Boys and Girls Club voluntarily assumed a duty to ensure Walter's safety while crossing the street, there is no evidence in the record that Walter or his parents relied on that duty. The trial court therefore did not err in granting summary judgment on that issue.
The Dayton Board of Education and Dayton City Schools also argue that as a business owner, the Dayton Boys and Girls Club had a duty to provide for Walter's safe entrance into its premises. Assuming, arguendo, that the Dayton Boys and Girls Club was a business owner that had a duty to provide a safe entrance into the club premises, the Dayton Boys and Girls Club certainly had no duty to protect Walter while he was in the public street.
The Dayton Board of Education and Dayton City Schools also argue that a genuine issue of material fact exists regarding whether the Dayton Boys and Girls Club breached a duty of care that it had pursuant to Ohio Adm. Code 5101:2-12-46. They argue that the Dayton Boys and Girls Club was a child day care center and that as such, it had to comply with Ohio Adm. Code 5101:2-12-46. The Dayton Boys and Girls Club argues that it was a youth development center, not a child day care center, and thus, it was not subject to the requirements of Ohio Adm. Code 5101:2-12-46.
We need not determine whether the Dayton Boys and Girls Club was a child day care center because Ohio Adm. Code 5101:2-12-46 did not apply to the facts in this case. Ohio Adm. Code 5101:2-12-46(B)-(C) requires that a child day care center have written safety policies that include the following:
 (2) A policy governing arrival and departure of children to assure that a child-care staff member is aware of each child's presence at the center.
* * *
 (6) A plan for safety whenever children are transported by vehicle away from the center on field trips, special outings, or routine trips.
The Dayton Board of Education and Dayton City Schools argue that these requirements established a duty on the part of the club employees to meet the children at the bus and to escort them into the club. We do not agree. Ohio Adm. Code 5101:2-12-46(C)(2) was not violated because it only required that a staff member be aware of a child's presence, not that the staff member ensure that a child safely crossed the street. Further, Ohio Adm. Code 5101:2-12-46(C)(6) was not applicable to this case because Walter was not injured while on a field trip, special outing, or routine trip with the Dayton Boys and Girls Club. Thus, even if the Dayton Boys and Girls Club was a day care center and was subject to Ohio Adm. Code5101:2-12-46, it did not violate the requirements of that rule.
The Dayton Board of Education and Dayton City Schools also argue that there is a genuine issue of material fact regarding whether the Club's negligence proximately caused Walter's death. Because we concluded, supra, that the Dayton Boys and Girls Club had not had a duty to protect Walter while he had been crossing the street, we need not address this argument.
The assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and GLASSER*, J., concur.
* Hon. George M. Glasser sitting by assignment of the Chief Justice of the Supreme Court of Ohio.