EICHER ET AL., APPELLANTS, *v.* UNITED STATES STEEL
CORPORATION, APPELLEE.

[Cite as Eicher *v.* United States Steel Corp. (1987), 32 Ohio St. 3d 248.]

(No. 86-1793—Decided September 2, 1987.)

*Sindell, Lowe & Guidubaldi Co., L.P.A.,* and *Steven A. Sindell,* for appellant.

*Louise Q. Symons, Burke, Haber & Berick* and *Anthony J. DiVenere,* for appellee.

HOLMES, J. The courts below found that appellants failed to produce sufficient evidence to meet the legal requirements for their cause of action. For the reasons set forth herein, we affirm such determinations.

Initially, it is pointed out that appellants offered no verifiable evidence that Eicher was ever exposed to any harmful chemical or gas. All of the events in question occurred outdoors in open spaces. No evidence was adduced as to the chemical composition of the fumes to which appellants assert Eicher was exposed. Appellants did not show that on the date in question such fumes were different from those on other work days, or that any unusual processes were performed by U.S. Steel. Also, none of Eicher's co-workers were harmed though several of them were with him during the times of alleged exposure. Consequently, there was no verifiable evidence to support appellants' allegations that a hazardous work condition in fact existed.

Appellants would imply the existence of a hazard as well as U.S. Steel's knowledge of its existence from the fact that U.S. Steel's employees were issued face masks. In that U.S. Steel did not supply such a mask to Eicher, it is contended that U.S. Steel failed to perform the duty owed to Eicher, as the employee of an independent contractor. This duty, it is asserted, arises in two ways, *i.e.*, under Ohio common law and pursuant to R.C. 4101.11.

The statute in question, R.C. 4101.11, is commonly referred to as the "frequenter statute," and provides as follows:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein *and for frequenters thereof,* shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters." (Emphasis added.)

The duty owed to frequenters, *i.e.,* including employees of other companies, is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge. See, *e.g., Westwood* v. *Thrifty Boy* (1972), 29 Ohio St. 2d 84, 58 O.O. 2d 154, 278 N.E. 2d 673, paragraph one of the syllabus.

However, the duty to frequenters of places of employment, as set forth in R.C. 4101.11, does not extend to hazards which are inherently and necessarily present because of the nature of the work performed, where the frequenter is the employee of an independent contractor. As stated in *Wellman* v. *East Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E. 2d 629: "Where an independent contractor undertakes to do work for another *in the very doing of which* there are elements of * * * danger * * *, no liability * * * ordinarily attaches to the one who engaged the services of an independent contractor." (Emphasis added.) *Id.* at paragraph one of the syllabus. Such an invitee may recover when the injury results "* * * by reason of the abnormally dangerous condition of the premises, only if the principal employer has, and the servant has not, actual or constructive notice of the existence of such condition." *Davis* v. *Charles Shutrump & Sons Co.* (1942), 140 Ohio St. 89, 23 O.O. 299, 42 N.E. 2d 663, paragraph one of the syllabus. See, also, *Schwarz* v. *General Electric Realty Corp.* (1955), 163 Ohio St. 354, 358, 56 O.O. 319, 320, 126 N.E. 2d 906, 909.

It is appellants' contention that a

greater duty devolves upon U.S. Steel such that, since U.S. Steel has sole control over the safety measures necessary to eliminate the hazard, it owed Eicher a greater duty than mere notification of a hazard's existence. As previously mentioned, appellants have not directly shown that chemically hazardous fumes were, in fact, present at the work site. The possession of face masks and protective clothing by particular U.S. Steel employees might, under circumstances not before us, give rise to an implication that a hazardous condition existed at the work site. However, in the case *sub judice,* it was made fairly clear by the close of appellants' presentation of evidence that the sole employees to possess such equipment were those who worked inside the BOP shop, whose job it was to directly handle molten steel and who apparently wore their masks while pouring the steel into various molds. None of these persons were ever observed to wear their face masks outside the BOP shop but, instead, these masks hung loosely about their necks when they entered or exited the pouring area. There was no proof that these masks contained respiratory equipment or were in any way unusual. No one was furnished a mask who merely worked around, but not inside, the BOP shop. Consequently, such masks and equipment could only have been supplied to protect against the dangers attendant to handling molten metal, but were certainly never related to the atmosphere outside the BOP shop area.

Furthermore, at no time did Eicher ever request such face mask from either U.S. Steel or his own employer. He never complained about the presence of fumes, and made no attempt to purchase a face mask himself. Thus, even by the standard erected by appellants, which standard has no demonstrable basis, there could be no question for a trier of fact to determine. Appellants did not demonstrate a particular hazardous condition, U.S. Steel's knowledge of a hazardous condition, the presence of safety equipment utilized to protect against the particular hazard alleged or that U.S. Steel had exclusive control of the safety equipment.

Finally, and perhaps most crucially, appellants produced no expert, medical or scientific, to demonstrate a causal connection between Eicher's collapse and any element present on the work site. On recross-examination, Eicher admitted that no doctor ever told him specifically what caused his heart attack. There was, however, considerable testimony by Eicher of his prior susceptibility to heart disease.[1]

We further note that Eicher was an employee, and therefore under the direct control, of an independent contractor and not U.S. Steel. The primary responsibility for protecting one in Eicher's circumstances rests upon Eicher's employer, Stevens Painton. *Lake Shore & Mich. So. Ry. Co.* v. *Fitzpatrick* (1877), 31 Ohio St. 479, 485. The law cannot be made to exchange the relative positions of U.S. Steel, which stands as a mere landowner with respect to Eicher, and Stevens Painton,[2] which controls the conditions of Eicher's employment.

Having been presented with no

---

[1] Eicher admitted that he was under treatment for "slightly elevated blood pressure" and a "high normal cholesterol level," which had created a forty-percent occlusion of one artery, was overweight, and smoked one-half to one pack of cigarettes per day. Also, Eicher's father died "in his mid-forties" of a myocardial infarction.

[2] It was brought out in oral argument that Eicher had applied for, but was denied, workers' compensation benefits for his condition.

evidence upon which reasonable minds could disagree, the trial court properly granted U.S. Steel's motion for directed verdict. Civ. R. 50.

Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., LOCHER and WRIGHT, JJ., concur.

H. BROWN, J., concurs in judgment only.

SWEENEY and DOUGLAS, JJ., dissent.

SWEENEY, J., dissenting. Since I am of the opinion that the evidence adduced below, when viewed in a light most favorable to appellants under Civ. R. 50(A)(4), was sufficient to overcome the motion for a directed verdict, I must respectfully dissent from the majority decision herein.

The record before us indicates that appellee, at the very least, had control of the BOP shop area and was presumably aware of the fact that the backhoe assigned to appellant was stored within the BOP shop. Since the backhoe was situated in that area in which appellee had control, and since it appears that employees of appellee working in the BOP shop routinely wore protective masks and clothing while engaged in BOP shop operations, I believe that the minimal essentials are present in order to allow this cause to proceed to the jury.

In *Hirschbach* v. *Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St. 3d 206, 6 OBR 259, 452 N.E. 2d 326, this court reviewed the applicability of R.C. 4101.01 *et seq.*, the "frequenter statutes," and held in the syllabus:

"One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor."

Given this court's prior determination in *Hirschbach,* I would reverse the decision rendered below and remand the cause for further proceedings.

DOUGLAS, J., concurs in the foregoing dissenting opinion.