**Keffer**
v.
**Honda of America Mfg. Co.**
*[Cite as 8 AOA 127]*

*Case No. 14-89-28*
*Union County, (3rd)*
*Decided December 7, 1990*

*Thomas D. Thompson, Thompson, Meier & Derson, 33 North High Street - Suite 900, Columbus, Ohio 43215, for Appellant.*

*Sandra J. Anderson and Patricia Davidson, Vorys, Sater, Seymour & Pease, 52 East Gay Street, P.O. Box 1008, Columbus, Ohio 43216-1008, for Appellee, Honda of America.*

*Jeffrey W. Hutson and John A. Fiocca, Jr., Lane, Alton & Horst, 175 South Third Street, Columbus, Ohio 43215, for Appellee, Kite, Inc.*

*John C. Nemeth and David A. Caborn, John C. Nemeth & Associates, 21 East Frankfort Street, Columbus, Ohio 43206, for Appellee, Haden Schweitzer.*

*David L. Day and Dale D. Cook, David L. Day, Attorneys at Law, 400 South Fifth Street - Suite 300, Columbus, Ohio 43215, for Appellee, Kirk & Blum Mfg.*

*William L. Peters, 1111 East Broad Street, Columbus, Ohio 43205, for Appellee, Ruscilli Construction.*

*Theodore D. Sawyer, Crabbe, Brown, Jones, Potts & Schmidt, 2500 One Nationwide Plaza, Columbus, Ohio 43215, for Appellee, Romanoff Electric Co.*

*Pamela B. Browning, Schottenstein, Zox & Dunn, 41 South High Street - Suite 2600, Columbus, Ohio 43215, for Appellee, TKS Industrial Company.*

EVANS, J.

Plaintiff-appellant, Robert E. Keffer, appeals from a judgment of the Court of Common Pleas of Union County granting summary judgment in favor of defendant-appellees, the Honda of America Manufacturing Co. (Honda), the Ruscilli Construction Co. (Ruscilli), Kite, Inc. (Kite), the Kirk & Blum Manufacturing Co. (Kirk), the T.K.S. Industrial Co. (T.K.S.), the Romanoff Electric Co. (Romanoff), and the Haden Schweitzer Corp. (Haden).

In 1985, appellee, Honda sought to construct a major addition to its plant in Marysville, Ohio. Numerous independent contractors were engaged to complete the project under the supervision of a project manager, appellee, Ruscilli.

Appellant, Robert E. Keffer, was an iron worker employed by one of these independent contractors, the Commercial Construction Co. (C.C.C.), whose primary function was the fabrication and erection of structural steel. As a precautionary measure, pursued to combat the inherent risk of fire from the sparks of their welding, C.C.C. regularly maintained a "fire watch" manned by their employees. This measure required a designated employee of C.C.C. to keep a fire extinguisher at hand in addition to his regular duties, to closely observe a designated area for any fires which may start, and to respond promptly to extinguish such fires.

On August 13, 1985, while standing "fire watch", appellant noticed that a piece of visqueen lying across a cart, roughly thirty feet outside of his fire watch area of responsibility, had ignited. Appellant rushed to the aid of those attempting to extinguish the fire. As appellant sprayed the fire with his extinguisher, an explosion occurred hurtling him across the floor and against a steel column. Appellant incurred burns to his face and eyes from the explosion and aggravated various pre-existing back and leg injuries. Subsequent investigation revealed that the source of the explosion was an uncovered container of paint thinner which was concealed under the visqueen.

Appellant filed a complaint on June 11, 1987, and an amended complaint on September 13, 1987, against twelve named defendants and three unknown defendants. Subsequently, five of the defendants were voluntarily dismissed from the action. Throughout December of 1988 and January of 1989 the defendants all filed motions for summary judgment. The trial court set April 7, 1989, as the cutoff date for discovery. All parties agreed that the matter would be submitted for decision upon the motions for summary judgment on May 9, 1989. By judgment entry of August 18, 1989, the trial court sustained the motions for summary judgment of all the defendants.

It is from this judgment that appellant appeals submitting three assignments of error which provide as follows:

*"ASSIGNMENT OF ERROR NUMBER ONE:* THE TRIAL COURT ERRONEOUSLY AND PREJUDICIALLY GRANTED APPELLEES' MOTIONS FOR SUMMARY JUDGMENT BASED UPON ITS ERRONEOUS DETERMINATION THAT OHIO'S 'SAFE PLACE TO WORK' STATUTE, SEC. 4101.11 OHIO REV. CODE, DID NOT APPLY TO THE APPELLANT BECAUSE HE WAS NOT AN EMPLOYEE OF ANY OF THE APPELLEES.

*"ASSIGNMENT OF ERROR NUMBER TWO:* THE TRIAL COURT ERRONEOUSLY AND PREJUDICIALLY GRANTED APPELLEES' MOTIONS FOR SUMMARY JUDGMENT BY CONCLUDING THAT THE INSTRUMENTALITY CAUSING APPELLANT'S INJURY WAS A HAZARD OF HIS EMPLOYMENT THEREBY PRECLUDING LIABILITY ON THE PART OF ANY OTHER PARTY.

*"ASSIGNMENT OF ERROR NUMBER THREE:* THE TRIAL COURT ERRONEOUSLY AND PREJUDICIALLY GRANTED APPELLEES'

MOTIONS FOR SUMMARY JUDGMENT BASED UPON ISSUES THAT WERE STILL BEING FACTUALLY DISCOVERED AND WHICH WERE NOT ARGUED OR SUPPORTED BY APPELLEES IN THEIR MOTIONS."

In support of the first assignment of error appellant argues that R.C. 4101.11 imposes on appellees, Honda and Ruscilli, a legal duty to provide appellant with a safe place to work. Appellant maintains that he was a frequenter of the premises within the meaning of that term as used in R.C. 4101.11. Furthermore, asserts appellant, both Honda and Ruscilli were employers under the definition of that term contained in R.C. 4101.01(C) because they had "control or custody of any place of employment." Therefore, according to appellant, liability for Honda and Ruscilli in this case boils down to the question of custody or control of the premises.

While there is some degree of overlap, the appellees herein can be separated into essentially three categories. Firstly, we shall consider Honda's duty of care by virtue of its ownership of the premises. Secondly, we shall consider the duty of Ruscilli as the project manager responsible for the overall management of the project. Lastly, we shall consider the duty owed appellant by the remainder of the appellees, the other independent contractors engaged in the project.

R.C. 4101.11, commonly known as the "frequenter statute", provides that:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and the frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and proscribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

The term "frequenter" is defined by R.C. 4101.01(E) as "every person other than an employee, who may go or be in a place of employment under circumstances which render him other than a trespasser" and thus includes employees of an independent contractor. *Kafel v. Republic Steel Corp.* (1972), 30 Ohio St. 2d 55; *Eicher v. United States Steel Corp.* (1987), 32 Ohio St. 3d 248; *Wise v. Zachrich Construction Co., Inc.* (June 13, 1990), Defiance App. No. 4-89-1, unreported. R.C. 4101.01(C) defines an "employer" as "every person, firm, corporation, agent, manager, representative, or other person having control or custody of any employment, place of employment, or employee".

Appellant argues that Honda, either individually or jointly in concert with Ruscilli, had "custody or control" of the premises on which he was injured. Therefore, appellant argues that since he was a "frequenter" Honda and/or Ruscilli had a statutory duty to provide him with a safe workplace.

We disagree. In *Eicher v. United States Steel Corp.* (1987), 32 Ohio St. 3d 248 (syllabus), the Supreme Court of Ohio considered the applicability of the frequenter statute to independent contractors and found that:

"The duty to frequenters of places of employment set forth in R.C. 4101.11, does not extend to hazards which are inherently and necessarily present because of the nature of the work performed, where the frequenter is the employee of an independent contractor." See also, *Wellman v. East Ohio Gas Co.* (1953), 160 Ohio St. 103.

There are two exceptions to this rule. First, as stated by the Supreme Court of Ohio in *Hirschbach v. Cincinnati Gas & Electric Co.* (1983), 6 Ohio St. 3d 206, (syllabus):

"One who engages the services of an independent contractor, and who *actually participates* in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of an independent contractor." (Emphasis added).

Subsequently, in *Cafferkey v. Turner Construction Co.* (1986), 21 Ohio St. 3d 110, (syllabus), the Supreme Court of Ohio applied this exception to general contractors in holding that:

"A general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work."

The phrase "actively participated" is considered to require that the premises owner or the general contractor either gave or denied permission for the critical acts resulting in the employee's injury. See *Cafferkey, supra* at 112, 113; *Mount v. Columbus & Southern Ohio Elec.*

*Co.* (1987), 39 Ohio App. 3d 1; *Meadors v. Zaring Co.* (1987), 38 Ohio App. 3d 97; *Millhouse v. General Tire & Rubber Co.* (1983), 9 Ohio App. 3d 203. In more general terms, we consider "actively participated" to denote some direct involvement in the work of the subcontractor by an owner or general contractor such as instructing a subcontractor as to "how" to perform certain work rather than just "where" and "when" to perform the work.

The second exception, as set forth by the Supreme Court of Ohio in *Davis v. Shutrump & Sons Co.* (1942), 140 Ohio St. 89, states that the employee of an independent contractor is entitled to recover when his injury results:

"*** by reason of the abnormally dangerous condition of the premises, only if the principal employer has, and the servant has not, actual or constructive notice of such condition." See also, *Schwarz v. General Electric Realty Corp.* (1955), 163 Ohio St. 354, 358.

In other words, the premises owner, with knowledge of a dangerous condition, will not be shielded from liability where the dangerous condition already existed when the subcontractor came to the premises and the owner failed to notify him.

In application to the case *sub judice*, it is uncontroverted that iron working is an inherently dangerous activity, as is being responsible for "fire watch" in conjunction therewith. The danger of sparks from welding causing a fire or explosion is exactly why C.C.C. regularly maintained a "fire watch" on the job site. Accordingly, we find the general rule of law excluding a premises owner from liability for an injury sustained by an employee of an independent contractor engaged in an inherently dangerous activity, as set forth in *Eicher, supra,* to be applicable to both Honda and Ruscilli.

In consideration of the two exceptions articulated by the Supreme Court of Ohio in *Davis, Hirschbach* and *Cafferkey, supra,* the record contains no evidence that either Honda or Ruscilli "actively participated" in creating the condition which led to appellant's injury. Appellant points to the fact that Honda and Ruscilli jointly implemented and exclusively enforced various fire safety rules and that this constituted "active participation". We disagree. Such precautions are well within the scope of an owner's or a project supervisor's routine involvement in a construction project. Additionally, it is clear from the record that the condition leading to appellant's injury did not exist on the premises prior to C.C.C.'s arrival on the job site. Accordingly, we conclude that neither of these exceptions serve to impose a duty of care upon Honda or Ruscilli.

As applied to the remaining parties, independent contractors Kite, Kirk, T.K.S., Romanoff and Haden, appellant did not argue that a duty of care was owed him under R.C. 4101.11. Rather, appellant argues, in his reply brief, that the majority of these remaining appellees did not move for summary judgment on the basis of a lack of negligence. Nonetheless, appellant argues, the trial court erroneously premised its judgment sustaining their motions for summary judgment on that basis.

We reject this argument. Upon appeal a reviewing court is concerned not with the trial court's rationale but rather its final disposition of the matter. As stated by the court in *Taylor v. Yale & Towne Mfg. Co.* (1987), 36 Ohio App. 3d 62:

"An appellate court will not reverse a correct judgment merely because a lower court assigned erroneous reasons as the basis of the judgment." See generally, 5 Ohio Jurisprudence 3d (1978) 83, Appellate Review, Section 530.

Further, appellant has failed to allege the existence of any genuine issue of material fact as to any alleged duty of care owed him by any of these remaining appellees.

Accordingly, appellant's first assignment of error is not well taken and is overruled.

For his second assignment of error appellant contends that the cases leading to *Eicher, supra,* contain an implicit version of the common law doctrine of assumption of risk. Therefore, appellant argues, in order for a premises owner to be excluded from liability on the basis that the plaintiff was the employee of an independent contractor engaged in an inherently dangerous activity, it must be demonstrated that the employee both knew of and appreciated the risk created by the dangerous condition. Further, appellant argues that appellees had the defense of assumption of risk available to them to negate their liability and that such poses an issue for the trier of fact.

We reject appellant's assertions. There is no authority for the proposition that the appellees are required to show that appellant knew and appreciated the risk which ultimately caused his injury in order to be excluded from liability pursuant to *Eicher, supra.* The authority cited by appellant stands only for the proposition that assumption of risk is an available

defense to an action based upon R.C. 4101.11. Further, even were such a requirement imposed, it is apparent that any individual engaged in an activity so risky that the activity is considered *per se* or inherently dangerous must be deemed to know and appreciate the risk involved. For example, in a job requiring a "fire watch" it is apparent that those engaged therein know and appreciate the risk of fire. Lastly, we note that since appellant has failed to establish a *prima facie* case of negligence, those affirmative defenses potentially available to the appellees are immaterial. Further, even if material, appellant cannot claim prejudice to his position based upon the appellees' lack of opportunity to present these defenses.

For these reasons appellant's second assignment of error is not well taken and is overruled.

For his third assignment of error appellant contends that the trial court erred in granting summary judgment upon issues which were still being factually developed through discovery. Appellant alleges that at the pretrial conference of November 14, 1988, the appellees expressed an interest in proceeding with motions for summary judgment though discovery had not yet been completed. Accordingly, to placate his concerns, appellant alleges that the appellees agreed to proceed only upon those issues which had been completely developed through discovery rather than relying on any absence of proof as to those matters which had not been fully developed factually. Appellant concedes that all of the appellees except T.X.S. and Haden complied with this agreement in filing their motions for summary judgment. However, appellant argues, these two appellees premised their motions for summary judgment upon an absence of proof which, since discovery was not complete, denied him a reasonable opportunity to rebut. Further, appellant argues that the trial court relied upon this absence of proof in rendering its decision.

As stated in the trial court's judgment entry, all discovery was to have been completed by April 7, 1989, and the matter was submitted for decision upon the motions for summary judgment on May 9, 1989. In total, appellant had nearly four years from the date of his injury and nearly two years since the filing of his original complaint to engage in discovery. Accordingly, we conclude that appellant had a reasonable period of time in which to develop the facts of his case.

Further, we note Civ. R. 56(F), which provides as follows:

"Should it appear from the affidavits of a party opposing the motion for summary judgment that he cannot for sufficient reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

In sum, appellant had ample time to conduct the discovery needed and offers no reason why such is not the case. Further, appellant failed to utilize the procedural machanism available to him to gain more time for discovery.

Accordingly, appellant's third and final assignment of error is not well taken and is overruled.

Upon viewing the record in the light most favorable to appellant, we conclude that there is no genuine issue as to any material fact and that reasonable minds can come to but one conclusion, that conclusion being that the appellees did not owe a duty of care to appellant and, thus, the appellees were entitled to judgment as a matter of law.

Having found no error prejudicial to appellant in the particulars assigned and argued herein, the judgment of the trial court is affirmed.

*Judgment affirmed.*

SHAW, P.J., and BRYANT, J., concur.