Plaintiff-appellant, Wendy Komenovich, appeals from a Butler County Court of Common Pleas decision to grant summary judgment in a wrongful death action to defendants-appellees, AK Steel Corporation ("AK") and Danis Building Construction Company ("Danis"). We affirm.
On or about March 26, 1996, AK and Danis entered a Contractors and Service Providers Master Agreement ("Agreement"). The Agreement required Danis to perform repairs on AK buildings. AK would issue purchase orders informing Danis which building to work on and what repairs needed to be done. In addition, the Agreement required Danis and its employees (including subcontractors) to: (1) undergo safety training; (2) adopt a safety program; (3) employ a safety consultant; (4) prepare and submit a safety manual; and (5) conduct safety meetings.
On or about October 10, 1996, AK issued a purchase order to Danis to perform repairs at the Classifier Building ("Classifier"). On or about October 23, 1996, Danis contracted with E.A. Stevens Company ("Stevens") to water blast and paint new and existing steel structures. Stevens hired Jason Christensen as a health and safety director to create a safety manual on the hazards at AK, including how to "lock-out" equipment,[1] and conduct safety training. Stevens' safety manual described the lock-out procedure and hazard communications.[2]
Richard Felton and Albert Gilbert, employees of Stevens, participated in training programs about safety policies, including lock-out procedures.
On or about December 2, 1996, Doug Gurley, superintendent for Stevens, asked John Robinson of Danis when Stevens could start the work at the Classifier. Robinson told Gurley that Stevens could not begin the work at the Classifier. Robinson further instructed that he would advise Gurley when he had permission to work at the Classifier.
Despite Robinson's instructions, on December 5, 1996, Gurley decided to perform the work at the Classifier. Gurley told Felton and Gilbert to obtain safety harnesses, lanyards[3], and ladders and take them to the Classifier. When they arrived at the Classifier, Gurley instructed Felton and Gilbert to wear their safety equipment and "tie off" when standing on step ladders to prime and paint. Inside the Classifier was a rotation screw conveyor ("conveyor") which Gilbert knew would be below him while he was working. Gurley did not tell Felton or Gilbert to lock-out the conveyor, nor did Gilbert consider it necessary to lock-out the conveyor.
After Gurley left, Gilbert and Felton went to sign in at the Basic Oxygen Furnace ("BOF") Building, another building at AK. Felton signed in and indicated that he did not need a lock-out and was aware of the hazards in the Classifier. Felton and Gilbert proceeded to the Classifier to perform their job tasks. Some time later, Gilbert heard a noise, turned around, and discovered that a part of Felton's body harness was caught in the conveyor and Felton was being pulled into the conveyor. Since Gilbert could not read, he could not disable the conveyor. Instead, Gilbert left the Classifier to get help. When Gilbert returned with help, Felton was dead by asphyxiation.
On January 24, 1997, appellant, administratrix of the estate of Richard Felton, filed a wrongful death action against AK, Danis, and Stevens. On April 30, 1998, the trial court granted summary judgment in favor of AK and Danis, but denied Stevens' request for summary judgment. On June 15, 1998, the trial court granted Stevens' request to strike the affidavit of appellant's expert, Dr. Ronald Huston, but denied its motion to reconsider summary judgment.[4]
Appellant filed a timely appeal and asserts three assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO AK BECAUSE SAFETY PROCEDURES WERE NOT SUFFICIENT AND/OR WERE NOT FOLLOWED; AK DID ACTIVELY PARTICIPATE IN THE WORK; THE MANNER OF INJURY WAS NOT OPEN AND OBVIOUS.[5]
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DANIS BECAUSE DANIS KNEW ABOUT THE DANGERS OF WORKING OVER THE OPEN, UNGUARDED SCREW CONVEYORS, AND BREACHED ITS DUTY AS THE GENERAL CONTRACTOR, BY REMOVING THE COVERS OVER THE SCREW CONVEYORS; BY NOT WARNING STEVENS OF THE DANGERS OF THE UNGUARDED SCREW CONVEYORS; AND NOT MAKING THE COVERS AVAILABLE TO STEVENS; AND DANIS ACTIVELY PARTICIPATED IN THE WORK PERFORMED BY STEVENS.[6]
Assignment of Error No. 3:
 IT WAS PROPER FOR PLAINTIFF'S EXPERT RONALD L. HUSTON, PH.D., P.E., TO REVIEW THE OSHA RECORDS FORMULATING HIS OPINION AND IT WAS ERROR FOR THE TRIAL COURT TO STRIKE HIS AFFIDAVIT.
In her first assignment of error, appellant argues that AK had a non-delegable duty to Felton, and AK breached that duty when it failed to communicate the hazards of the conveyor and to control the movement of Felton. We disagree.
Civ.R. 56(C) permits the trial court to dismiss a cause of action where there is no genuine issue as to any material fact.Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344
346. Summary judgment will be granted as a matter of law if reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made. Id. A genuine issue of material fact exists when the relevant factual allegations in the pleadings, affidavits, depositions, or interrogatories are in conflict. Fitzgerald v.Masland-Hayashiy, Inc. (Dec. 15, 1997), Warren App. No. CA97-05-042, unreported, at 6-7, citing Duke v. Sanymetal Prod.Co., Inc. (1972), 31 Ohio App.2d 78.
In deciding whether there is a genuine issue of material fact, the evidence must be construed in the nonmoving party's favor. Hannah v. Dayton Power Light Company (1998), 82 Ohio St.3d 482,485. Further, "the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions must be construed in a light most favorable to the party opposing the motion." Id., citing Turnerv. Turner (1993), 67 Ohio St.3d 337, 341.
In reviewing the moving party's motion, a trial court should award summary judgment with caution. Welco,67 Ohio St.3d at 346. Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essential elements of her claim. Id. In determining whether the plaintiff demonstrated the elements of her claim, an appellate court must independently review the record to determine if summary judgment was appropriate. Therefore, an appellate court affords no deference to the trial court's decision while making its own ruling. Fitzgerald at 7-8, citing Schwartz v. Bank One,Portsmouth, N.A. (1992), 84 Ohio App.3d 806.
Under R.C. 4101.11, an employer owes a duty of care to employees and frequenters, including employees of other companies. Eicher v. United States Steel Corporation (1987),32 Ohio St.3d 248, 249. The relevant part of the statute states:
 Every employer shall furnish * * * a place of employment which shall be safe for the employees therein and for frequenters * * * [and] shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, * * * and do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.
However, this duty of care does not extend to hazards which are inherently and necessarily present.
 Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one * * * [of the] contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor. (Emphasis added.)
Wellman v. Edison Ohio Gas Company (1953), 160 Ohio St. 103, paragraph one of the syllabus.
Liability will attach in an inherently dangerous job if the employer or property owner actively participated in the employee's work or retained custody or control over the work area where the injury occurred. Hirschbach v. Cincinnati Gas Electric (1983), 6 Ohio St.3d 206, paragraph two of the syllabus; Schwartz v. General Electric Realty Corporation
(1955), 163 Ohio St. 354, at paragraph three of the syllabus. Active participation means that the "general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury." Bond v. Howard Corporation (1995), 72 Ohio St.3d 332,337. Therefore, active participation means more than supervising or coordinating. Cafferkey v. Turner ConstructionCompany (1986), 21 Ohio St.3d 110, 113. The employer must exercise control over the work activities, or retain control over a critical variable in the workplace before it can be held liable to the independent contractor's employees. Sopkovich v.Ohio Edison Company (1998), 81 Ohio St.3d 628, 643.
In the present case, there is no question that working above moving machinery is an inherently dangerous job. See,e.g., Bond 72 Ohio St.3d at 336 (holding that a construction site is inherently a dangerous setting). Appellant argues that the conveyor was not open and obvious, thus the job was not inherently dangerous. We disagree. It is common sense that loose clothing worn near moving machinery could possibly become entangled if care is not exercised. The machinery under such circumstances poses an inherent danger on the job site.
Appellant next argues that AK actively participated in Felton's job because it granted Felton permission to work in the Classifier and failed to warn him of the dangers. However, AK and Gurley agree that Gurley was not given permission to work in the Classifier. Regardless, we hold that an employer giving permission to a frequenter to work at a particular job site does not, in itself, amount to active participation. See,e.g., Sopkovich, 81 Ohio St.3d at 643.
The Ohio Supreme Court has held that monitoring work progress or directing where to work does not amount to active participation. For example, in Schwartz v. General ElectricRealty Corporation, 163 Ohio St. 354, the owner warned the contractor of danger on the job and directed him where to unload the materials on the job site, which was near electrical lines. Id. The court held that while the owner directed where the material was to be loaded, and warned of the dangers, the job operation was totally under the control of the contractor. Therefore, the owner did not actively participate in the job operation. Id.
The case at bar presents a similar factual situation. AK hired Danis to work on its buildings, including painting of the steel structures. Assuming arguendo that Stevens had permission to work in the Classifier, Felton was warned and was made aware of the dangers at his safety training and when he signed in at the BOF. AK employees were not present at the Classifier and did not direct the manner and method of how Felton was to do his job. AK did not direct or control Felton's job performance, therefore, no active participation.
Next, appellant argues that AK was in complete control of the Classifier since AK's policy required workers to sign in at the BOF before entering, and confirm whether a lock-out is needed. Therefore, appellant argues that AK had exclusive control over the accessibility of the Classifier.
In Sopkovich, cited by appellant in support of the above argument, the contractor's employees were painting steel structures near electrical lines and circuits. Every day, the contractor would check with the owner to find out which lines were not energized so he could direct his employees where to paint. The court found that the employer maintained exclusive control over a critical variable in the work environment because the employer "retained exclusive control over the determination of which electrical circuits or lines would be de-energized * * * and retained exclusive control over the process of activating and de-activating the lines." Id.
The critical variable in the work environment in this case that posed harm to Felton and Gilbert was the moving conveyor. Testimony from Gilbert, Gurley, and Christensen stated that all employees were trained on how to lock-out machinery. Further they were informed that if they did not know how to perform a lock-out, they should ask their supervisor or another worker who did. Appellant has not set forth any evidence that demonstrates that AK was in exclusive control of shutting off the conveyor in the Classifier.
In Sopkovich, the employer was the only person who could deactivate the electrical lines. Here, others besides AK could lock-out the conveyor. While Gilbert testified that he never locked-out machinery or knew how to lock-out the conveyor, he testified that he was trained on how to lock-out machinery in general, witnessed other Stevens' workers lock-out machinery, and knew that he could ask a supervisor or another worker to lock-out the conveyor. Gilbert testified that he did not find it necessary to lock-out the conveyor since he would "tie-off" his body harness.
The mere fact that AK had policies in place that required workers to sign in at the BOF before entering the Classifier does not in itself establish that AK had exclusive control over who entered the Classifier. This does not amount to exclusive control over the Classifier.
Based upon the foregoing, we do not find any evidence indicating that AK had a duty under R.C. 4101.11 or that AK actively participated in Felton's work. Therefore, the grant of summary judgment in favor of AK was proper. Appellant's first assignment of error is overruled.
In her second assignment of error, appellant argues that Danis owed a duty to Stevens and breached it when it did not warn Stevens of the dangers in the Classifier. Therefore, appellant claims that the trial court's grant of summary judgment in favor of Danis was in error. We disagree.
As we previously discussed, the work Felton engaged in was inherently dangerous, therefore Danis does not owe a duty of care under R.C. 4101.11 to Felton. Appellant asserts several arguments to demonstrate that Danis actively participated in the work. First, appellant cites Nicholson v. Turner/Cargile
(1995), 107 Ohio App.3d 797, which held that the employer and general contractor were liable for the death of the subcontractor's employee since they failed to warn of the inherent dangers on the job site. However, Nicholson is distinguishable. In Nicholson, the employer actually observed
the unsafe practices, therefore, the court held that the employer had a duty to warn against them. Id. Here, Danis did not actually observe Felton or Gilbert engage in an unsafe practice, therefore, Danis did not have a duty to warn them. We further note that Danis did not even give Gurley permission to begin work in the Classifier. Accordingly, Danis was not aware, nor could it have been aware, of the possibility that Felton or Gilbert would be engaging in unsafe practices.
Next, appellant argues that Danis was negligent by failing to warn Stevens of the dangers in the Classifier. Appellant citesFreas v. Prater Construction Corporation, Inc. (1991), 60 Ohio St.3d 6, in which an employee was killed when a crane he was dismantling fell on him. The appellant in that case brought suit against the general contractor, subcontractor, and the manufacturer of the crane alleging product liability claims. The court affirmed the grant of summary judgment to all of the defendants stating that the employee was warned of the dangers.Freas does not support appellant's argument. Here, evidence establishes that Felton was warned of the dangers associated with working on AK premises. Therefore, Felton should have taken safety precautions.
Finally, appellant cites to Restatement of the Law, Torts 2d, (1963-64), Section 403, which subjects a contractor to liability if he "rebuilds, or repairs a chattel for another and turns it over to the other, knowing or having reason to know that his work made it dangerous for the use for which it is turned over." Prior to Stevens entering the Classifier, Danis had worked in the Classifier. Danis placed guards over the conveyor while they were working and removed them after the job was finished.[7] Appellant claims that Danis breached its duty when it removed the guards, did not make the guards available to Stevens, and failed to warn Stevens of the dangers of the conveyor.
First, there is no evidence that Danis even turned over the Classifier to Stevens. Gurley testified that he did not have the authority or permission to do the work at the Classifier. Second, Danis did not "rebuild, repair," or modify the conveyor. The guards were separate pieces of equipment that fit over the conveyor. When Danis finished its work inside the Classifier, it removed the guards, thereby leaving the conveyor as Danis found it. We do not see how Danis' use of the guards equates to rebuilding, repairing or modifying the conveyor.
Based upon the foregoing, we find that Danis did not actively participate in directing how Stevens should do the work, nor did Danis retain control "over a critical variable in the working environment" where Felton died. Therefore, appellant's second assignment of error is overruled.
In her third assignment of error, appellant argues that the trial court improperly excluded the affidavit of her expert, Dr. Ronald L. Huston. Appellant asserts that the trial court erroneously excluded Huston's affidavit because the opinion was based upon Occupational Safety and Health Administration ("OSHA") reports and concluded that the OSHA reports are inadmissible evidence. Appellant claims that OSHA reports are admissible, and therefore Huston's affidavit should not have been stricken from the record. We disagree with appellant's interpretation of the trial court's reasoning and find that the trial court did not err.
The admissibility of evidence used to formulate an expert opinion is governed by Evid.R. 703 which states that "[t]he facts of data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Evid.R. 703 permits an expert opinion or an inference if it is based upon personal perceptions or upon the perception of evidence admitted.State v. Solomon (1991), 59 Ohio St.3d 124, 126. "As long as evidence admissible at trial is introduced and admitted through fact witnesses with personal knowledge, an expert witness without personal knowledge of the underlying event is permitted to testify to an opinion based on admitted facts." PennsylvaniaLumbermens Insurance Corp. v. Landmark Electric, Inc. (1996),110 Ohio App.3d 732, 738.
An affidavit must be based upon personal knowledge, state that the affiant is competent to testify, and it must set forthfacts that would be admissible in evidence. Civ.R. 56(E). When an expert's affidavit not based upon personal knowledge is set forth in opposition to a summary judgment, it is considered but a link in a chain of evidence. Pennsylvania LumbermensInsurance Corp. at 739. An expert basing his opinion on facts beyond his personal knowledge and/or evidence not otherwise admissible, is in essence giving hypothetical testimony; it is not evidence standing alone that would support or oppose a summary judgment. Id. The evidence the expert relies upon must be admissible in order to create a genuine issue of material fact. Id.
If an affidavit is based upon inadmissible evidence, a court shall disregard it when considering a motion for summary judgment. Felker v. Schwenke (Aug. 6, 1998), Cuyahoga App. No. 73180, unreported, at 7. Therefore, a pleading opposing summary judgment cannot be supported by an affidavit which consists of hearsay or other inadmissible evidence. Id., citing Bernado v.Anello (1988), 61 Ohio App.3d 453.
The trial court has broad discretion in determining whether evidence is admissible. Inman v. Inman (1995), 101 Ohio App.3d 115,120. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
The trial court held that Huston's affidavit should be stricken not because Huston relied upon OSHA reports per se, but because Huston's affidavit was based upon evidence not perceived by him, evidence not presented, and inadmissible hearsay.
In his affidavit, Huston stated that he based his opinion upon a variety of evidence, some of which is admissible. However, Huston based his opinion upon OSHA reports which contained hearsay statements, and upon the deposition testimony of Gurley and other employees of AK, some of which contained inadmissible evidence of subsequent remedial measures. The trial court held that Huston's affidavit should be stricken from the record.
Based upon the fact that Huston relied upon inadmissible evidence, we find that the trial court did not abuse its discretion in striking Huston's affidavit. Assumingarguendo that Huston relied upon admissible evidence presented to the court, we find his affidavit immaterial. Huston states that Felton's fatal accident would not have occurred if AK had monitored the movements of workers, warned of the dangers, or if Danis had covered the conveyor, warned of the dangers, or instructed Felton how to lock-out the conveyor. First, undisputed testimony establishes that Stevens was required under contract to train and did train its workers on hazard communications and how to lock-out equipment. Second, under the first two assignments of error, we have ruled that AK and Danis did not owe a duty of care to Felton. Therefore, Huston's statements that AK or Danis did not follow the safety precautions were immaterial and irrelevant when considering the motion for summary judgment. Appellant's third assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., concurs.
WALSH, J., concurs in judgment only.
[1] "Lock-out" is a procedure that shuts down equipment and machines.
[2] "Hazard communications" refers to informing personnel of the hazards they may encounter on the job and instructing and training how to handle them.
[3] A strap or cord with a hook attached to the end. It is worn around the body and is used to secure oneself to a structure while reaching for an object that is almost out of one's reach.
[4] The entry denying Stevens' motion contained Civ.R. 54(B) language that there was no just reason for delay.
[5] AK only addresses the first assignment of error.
[6] Danis only addresses the second and third assignments of error. Stevens did not file a brief in this appeal.
[7] The record is unclear as to whether the guards were constructed by AK or by Danis. The determination of who constructed the guards has no relevancy on the outcome of this case.