JUDGMENT: AFFIRMED IN PART, REVERSED IN PART AND REMANDED
{¶ 1} Plaintiff-appellant, Lee Rettig, appeals the decision of the Cuyahoga County Court of Common Pleas that granted summary judgment in favor of defendants-appellees, General Motors Corporation and Toledo Edison. For the reasons stated below, we affirm in part, reverse in part, and remand the case.
 {¶ 2} Rettig began his electrical career in 1948 as an apprentice with Local Union No. 8 in Toledo, Ohio. He worked as a union electrician for forty-two years. Rettig is dying from malignant mesothelioma, an incurable cancer caused by exposure to asbestos. As part of a consolidated complaint, Rettig sued General Motors and Toledo Edison, among others, for his malignant mesothelioma. Specifically, Rettig alleged he was exposed to asbestos, through his work as an electrician, at sites owned by General Motors and Toledo Edison.
 {¶ 3} General Motors and Toledo Edison filed motions for summary judgment, arguing that the Wellman "no duty" rule applied in this case because Rettig was an employee of a subcontractor and engaged in inherently dangerous work. Rettig responded, arguing that he was unaware of the dangers of asbestos but that General Motors and Toledo Edison were well aware of the dangers existing on their premises and in the work he was hired to do. Rettig argued that General Motors and Toledo Edison breached their duty of care when they failed to warn Rettig or remove the dangers of asbestos from their premises. Rettig claimed that this is a standard premises liability case.
 {¶ 4} The trial court agreed with General Motors and Toledo Edison and granted summary judgment in their favor. Rettig appeals, advancing one assignment of error for our review, which states the following:
 {¶ 5} "The trial court erred in granting summary judgment to premises owners who knew of the latent dangers of asbestos exposure and failed to warn an unknowing and unsuspecting frequenter."
 Standard of Review {¶ 6} This court reviews a trial court's grant of summary judgment de novo. Ekstrom v. Cuyahoga County Comm. College, 150 Ohio App.3d 169,2002-Ohio-6228. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel. Dussell v. Lakewood Police Dept.,99 Ohio St.3d 299, 300-301, 2003-Ohio-3652, citing State ex rel. Duganitzv. Ohio Adult Parole Auth., 77 Ohio St.3d 190, 191, 1996-Ohio-326.
 Negligence {¶ 7} It is well settled that in order to establish an actionable claim of negligence, Rettig must establish (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) the defendant's breach is the proximate cause of the injury. Wallace v. Ohio DOC,96 Ohio St.3d 266, 2002-Ohio-4210, citing Mussivand v. David (1989),45 Ohio St.3d 314, 318. The duty element of negligence is a question of law for the court to determine. Id.
 Premises Liability {¶ 8} In a premises liability case, Ohio Revised Code sections 4101.11
and 4101.12 require that employers provide employees and frequenters with a safe place to work. The term "frequenters" includes the employees of independent contractors. Eicher v. United States Steel Corp. (1987),32 Ohio St.3d 248, 249. The duty owed to frequenters under R.C. 4101.11
and 4101.12 is no more than a codification of the common-law duty owed by an owner or occupier of premises to its invitees, which requires that the premises be kept in a reasonably safe condition and that warning be given of dangers of which the owner or occupier of the premises has knowledge. Id.; see, e.g., Westwood v. Thrifty Boy (1972),29 Ohio St.2d 84, paragraph one of the syllabus.
 {¶ 9} The duties set forth in R.C. 4101.11 and 4101.12 generally do not apply, however, when the independent contractor engages in inherently dangerous work. Wellman v. East Ohio Gas Co. (1953),160 Ohio St. 103. In Wellman, the court explained the "inherent danger" exception as follows:
 "1. Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor. "2. One who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance." Id., at paragraphs one and two of the syllabus.
 {¶ 10} In Schwarz v. General Elec. Realty Corp. (1955),163 Ohio St. 354, 359, the Ohio Supreme Court held that "notice to the independent contractor of hazards within the employment area is notice to his employees, as such independent contractor has the duty to transmit such notice or warning to his individual employees." Being "aware" of the danger surrounding the performance of the task does not require that the independent contractor or its employee have actual knowledge of the danger; constructive notice of the danger is sufficient. SeeEicher, 32 Ohio St.3d at 249.
 {¶ 11} Wellman will not apply, however, when the owner or occupier of the premises "actively participates" in the independent contractor's work. Hirschbach v. Cincinnati Gas Electric (1983), 6 Ohio St.3d 206, syllabus. "`Actively participated' means that the [one engaging the independent contractor] directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project." Bond v. Howard Corp. (1995),72 Ohio St.3d 332, syllabus.
 Toledo Edison {¶ 12} During a two-or three-week period in 1948 or 1949, Rettig was exposed to asbestos while installing an industrial generator located in a Toledo Edison facility. At the time, Rettig was employed by Ohio Pipe Trades as an apprentice. Rettig was responsible for taking asbestos fiber from bags and mixing it in five gallon buckets with a substance called Glyptal, which was made by General Electric. He then applied the mixture to the generator's spark plugs.
 {¶ 13} Toledo Edison alleges that there can be no question that Rettig was engaged in inherently dangerous work. Toledo Edison points to two paragraphs in Rettig's complaint, specifically, paragraphs 11 and 18 of the complaint, to prove that Rettig knew that working with asbestos was inherently dangerous.
 {¶ 14} Paragraph 11 states, in pertinent part:
 "Plaintiff's injuries and damages were directly and proximately caused by the negligence of each Defendant, as set forth above, and by each Defendant: "a. negligent failure to adequately warn Plaintiffs of the dangers and harms inherent to exposure to its products and the products in its premises; * * * ."
 {¶ 15} Paragraph 18 states, in pertinent part:
 "Defendants * * * repaired, modified, used, serviced, installed, and * * * to Plaintiffs, employers, and to others working in the vicinity of Plaintiffs, asbestos and asbestos products, and knew that these products would be used and handled by Plaintiffs and others similarly situated without any knowledge of their defects and inherent danger, and without inspection for defects and dangers."
 {¶ 16} Furthermore, Toledo Edison argues that working at a construction site is inherently dangerous. Finally, Toledo Edison states that it did not actively participate in Rettig's work.
 {¶ 17} Rettig alleges that neither he nor his employer knew of the dangers of working with asbestos; however, Toledo Edison knew of the dangers and never advised Rettig that mixing asbestos and Glyptal was dangerous. In addition, he was never provided a dust mask or respirator. Further, Rettig claims that the Toledo Edison facility in which he worked was not under construction. Finally, Rettig alleges that either Toledo Edison or General Electric would have provided the instructions and specifications that required him to mix asbestos and Glyptal.
 General Motors {¶ 18} Rettig was an employee of various independent contractors hired to perform electrical work at several General Motors facilities from 1953 to 1990. Specifically, Rettig worked at a General Motors foundry plant in Defiance, Ohio, for a year and a half in 1953, and several other times over the next twenty-seven years. Rettig testified that he was involved in new construction, remodeling, and maintenance throughout the Defiance foundry plant. While working there, he was exposed to asbestos-covered steam lines, and Rockbestos asbestos-insulated wire, and he used an asbestos blanket supplied by General Motors while working at the plant.
 {¶ 19} General Motors argues that Rettig's work as an electrician was inherently dangerous because he admitted that his work involved new construction and renovation, as well as crawling over steam lines when running electrical lines. General Motors points to two Ohio Supreme Court cases wherein the court stated that working at a construction site and working with steam lines are inherently dangerous activities. SeeBond, supra (construction site); Wellman, supra (steam pipes). Furthermore, General Motors argues that Rettig's work required him to work directly with products that he believed contained asbestos, which were supplied by Rettig's employer. General Motors argues that an "inherent danger" by definition does not require knowledge or appreciation of the danger. It is either inherently dangerous or it is not. Lastly, General Motors argues that it did not actively participate in his work.
 {¶ 20} Again, Rettig argues that he and his employer were unaware of the dangers of asbestos and that General Motors was aware but did not warn Rettig or protect him. Rettig claims that very little of his work at General Motors involved construction activities, and that exposure to asbestos is not inherent in the craft of an electrician. Rettig argues that his work was made dangerous by the acts or omissions of the premises owner.
 Analysis {¶ 21} In this case, the ultimate dispute concerns the duty General Motors and Toledo Edison owed to Rettig. General Motors and Toledo Edison argue, and the trial court agreed, that because Rettig was engaged in inherently dangerous work, they owed Rettig no duty unless they actively participated in his work, according to Wellman and its prodigy. Rettig asserts that his work was not inherently dangerous, that he and his employer were unaware of the dangers of asbestos exposure, and that General Motors and Toledo Edison owed him a duty of care pursuant to R.C. 4101.11 and 4101.12.
 {¶ 22} We find unpersuasive Toledo Edison's argument that paragraphs 11 and 18 in the complaint prove that Rettig knew working with asbestos was inherently dangerous. It was simply a poor choice of words; further, it refers to the defendants' superior knowledge of the dangers surrounding exposure to asbestos. Nevertheless, the only evidence in the record that Rettig was exposed to asbestos at the Toledo Edison facility was his direct use of asbestos fibers, which he mixed with Glyptal during a two-to three-week period in 1948-49. Rettig's own employer supplied him with the materials he used, and his employer instructed him about what to do. There is no evidence in the record that the use of these materials was specified by Toledo Edison. The mere fact that Rettig used asbestos materials on Toledo Edison's premises is not enough to hold Toledo Edison liable to Rettig. Therefore, summary judgment in favor of Toledo Edison was proper.
 {¶ 23} We turn now to General Motors, and again we note that the duties set forth in R.C. 4101.11 and 4101.12 generally do not apply when an independent contractor engages in inherently dangerous work.Wellman, 160 Ohio St. 103.
 {¶ 24} There is no dispute that Rettig was an employee of an independent contractor hired to work at the General Motors facilities. In dispute, however, is whether Rettig was hired to perform a task that was inherently dangerous, and whether Rettig or his employer was aware of the dangers of working with and around asbestos. As stated inWellman, for the "inherent danger" rule of nonliability to apply, the independent contractor must know or appreciate that a degree of danger "surrounds" the performance of the task for which he was hired. See, also, Sopkovich, 81 Ohio St.3d at 643 (stating that plaintiff was aware that painting a partially de-energized substation is an inherently dangerous activity); Bond, 72 Ohio St.3d at 336 (stating that plaintiff was aware of dangers lurking within a construction site). There is no evidence in the record to suggest that Rettig or his employer was aware of the dangers of working with and around asbestos.
 {¶ 25} As for whether working with asbestos is inherently dangerous, as eloquently stated in Frost v. Dayton Power Light Co., "[w]e find our consideration of the issue difficult because an `inherent danger,` for purposes of the Wellman line of cases, has not been defined with any degree of clarity. Work has been defined as `inherently dangerous' when hazards are inherent and necessarily present because of the nature of the work performed. Schwarz, supra, paragraph one of the syllabus. Additionally, `inherently dangerous' work includes tasks which, because of their nature, `contain elements of real or potential danger.`Wellman." 138 Ohio App.3d 182, 193-194.
 {¶ 26} In Bohme, Inc. v. Sprint International CommunicationsCorp. (1996), 115 Ohio App.3d 723, 736, discretionary appeal not allowed (1997), 78 Ohio St.3d 1442, this court expanded upon what constitutes an "inherently dangerous" task by explaining that "inherently dangerous" work involves "`work which, although not highly dangerous, involves a risk recognizable in advance that danger inherent in the work itself, or in the ordinary or prescribed way of doing it, may cause harm to others.`" Id., quoting Restatement of the Law 2d, Torts, (1965), Section 427, Comment C.
 {¶ 27} Interestingly, in Gideon v. Johns-Manville Sales Corp. (1985),761 F.2d 1129, 1143, the Fifth Circuit Court of Appeals stated "[w]e have refused to hold asbestos products inherently dangerous. Hardy v.Johns-Manville Sales Corporation, 681 F.2d 334, 348 (5th Cir. 1982). At this time, whether an asbestos product is or is not unreasonably dangerous must be decided on the basis of the evidence as to the specific qualities of the particular product." See, also, Cimino v.Raymark Indus. (5th Cir. 1998), 151 F.3d 297, 331.
 {¶ 28} In this case, whether Rettig's work was inherently dangerous turns on whether Rettig or his employer was aware of the risks involved in exposure to asbestos. Although Rettig may have been working in a construction area, we do not believe that breathing ambient life-threatening asbestos dust is one of the dangers a worker was aware of at that time. Obviously, today anyone walking into a dusty building knows that they may be risking exposure to asbestos. However, at the time of Rettig's exposure, asbestos was a common product used in many trades, and workers were unaware of its cancer-causing components. Therefore, we find that a genuine issue of material fact remains as to whether Rettig or his employer was aware of the dangers involved in working with and around asbestos.
 {¶ 29} We do not find that the levels of asbestos exposure are a factor to consider in this case because R.C. 2307.941 does not apply to this action. Moreover, as stated in Horton v. Harwick Chem. Corp., "[m]edical science suggests that very limited exposure to asbestos can cause mesothelioma, perhaps the worst of asbestos-related diseases."73 Ohio St.3d 679, 684, 1995-Ohio-286. In this case, there is testimony in the record that Rettig was exposed to asbestos-covered steam lines, and Rockbestos asbestos-insulated wire, and he used an asbestos blanket supplied by General Motors while working at the General Motors plant.
 {¶ 30} Rettig's sole assignment of error is overruled as to Toledo Edison and is sustained as to General Motors.
Judgment affirmed in part, reversed in part, and remanded.
It is ordered that appellants and appellees share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., and MARY EILEEN KILBANE, J., CONCUR.